**NEW ORLEANS PUBLIC SERVICE, INC., Plaintiff-Appellant,**

v.

**The CITY OF NEW ORLEANS, the Council for the City of New Orleans, Sidney J. Barthelemy, et al., Defendants-Appellees.**

No. 85–3654.

United States Court of Appeals, Fifth Circuit.

Sept. 2, 1986.

gaining agreement.

Andrew P. Carter, J. Wayne Anderson, W. Glenn Burns, New Orleans, La., for plaintiff-appellant.

Jerome M. Feit, A. Karen Hill, F.E.R.C., Washington, D.C., for amicus F.E.R.C.

Herschel L. Abbott, Jr., David G. Radlauer, Edward H. Bergin, R. Lewis McHenry, H. Mark Adams, Eric J. Mayer, W.D. Meriwether, Jr., Vice President & Gen. Counsel, Middle So., New Orleans, La., Louis H. Willenken, Reid & Priest, New York City, for amicus Middle South.

Clinton A. Vince, Washington, D.C., Thomas Milliner, Bruce Naccari, Beverly Zervigon, Salvador Anzelmo, City Atty., Okla Jones, II, New Orleans, La., Berhardt K. Wruble, Glen L. Ortman, Paul E. Nordstrom, Washington, D.C., for City of New Orleans.

Hiram C. Eastland, Jr., Robert H. Harper, Jackson, Miss., for amicus Miss. Public Service Com'n.

Richard M. Troy, Asst. Atty. Gen., La. Dept. of Justice, New Orleans, La., for amicus State of La.

Frank Spencer, Jackson, Miss., Felshaw King, President, Nat. Ass'n of State Utility Consumer Advocates, Clearfield, Utah, for amicus Nat. Ass'n of State Utility.

Before RANDALL and WILLIAMS, Circuit Judges, and HINOJOSA *, District Judge.

RANDALL, Circuit Judge:

After reconsidering our opinion in *New Orleans Public Service, Inc. v. The City of New Orleans*, 782 F.2d 1236 (5th Cir.1986), we have decided to withdraw Part IV of our opinion, and substitute in its place the following:

IV.

The district court concluded that the jurisprudential doctrine of abstention barred adjudication of NOPSI's request for relief from the Council's regulatory authority. Although we recognize that abstention in the face of a federal preemption claim is, at a minimum, problematical, we conclude on the facts before us that the district court did not abuse its discretion by abstaining in the instant case.

Our conclusion that the district court properly exercised its discretion is informed by the particular structure of the Federal Power Act. As noted in our initial opinion in this case, with Part II of the Federal Power Act, 16 U.S.C. §§ 824–824k, Congress in 1935 "delegated to the Federal Power Commission, now the Federal Energy Regulatory Commission [FERC] exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce, without regard to the source of production." *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340, 102 S.Ct. 1096, 1101, 71 L.Ed.2d 188 (1982). This 1935 enactment was a "direct result" of the Supreme Court's holding in *Public Utilities Commission v. Attleboro Steam and Electric Company*, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 54 (1927), "that the states lacked power to regulate the rates governing interstate sales of electricity for resale." *New England Power Co.*, 455 U.S. at 340, 102 S.Ct. at 1101. The Federal Power Act, however, explicitly denied FERC jurisdiction "over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce." 16 U.S.C. § 824(b)(1). Congress created a "bright line" between federal and state jurisdiction, denying "state power to regulate a sale 'at wholesale to local distributing companies' and allow[ing] state regulation of the sale at 'local retail rates to ultimate consumers.'" *F.P.C. v. Southern California Edison Co.*, 376 U.S. 205, 214, 84 S.Ct. 644, 651, 11 L.Ed.2d 638 (1964) (quoting *Illinois Natural Gas Co. v. Central Illinois Public Service Co.*, 314 U.S. 498, 504, 62 S.Ct. 384, 386, 86 L.Ed. 371 (1942)). *Cf. Louisiana Public Service Commission v. F.C.C.*, —— U.S. ——, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (discussing dual system of state and federal regulation over telephone service embodied by Communications Act of 1934; concluding that Act did not preempt state regulation over depreciation of dual jurisdiction property for intrastate rate making purposes).

The existence of this "bright line" colors the way we view a preemption claim involving the Federal Power Act. NOPSI has attempted to depict the situation before us as one in which the Council is stepping into the realm of *wholesale* rate making, a field under the exclusive jurisdiction of FERC. NOPSI focuses on the disruption of a *federal* scheme. Yet federal court intervention here may constitute a disruption of a *state* regulatory scheme, for *retail* rate making is clearly a field left to the jurisdiction of the states. While the recent Supreme Court case of *Nantahala Power & Light Co. v. Thornburg*, —— U.S. ——, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986), required that the local council recognize the FERC-determined wholesale costs, local control over retail rate making is not preempted by federal law: *Nantahala* recognizes that retail rates need not necessarily be increased to reflect the corresponding increase in wholesale rates set by FERC. Instead, local councils are permitted the autonomy preserved to them by the Federal Power Act and can consider cost savings

* District Judge of the Southern District of Texas, sitting by designation.

in other areas relevant to the setting of retail rates. 106 S.Ct. at 2357–58.

■ Thus, under the Federal Power Act, the wholesale rates set by FERC, although a matter of national concern, are effectuated at the retail level only by local institutions. The structure of the Federal Power Act, preserving as it does state jurisdiction over retail rates, suggests that these local institutions should normally proceed unfettered by federal interference. Although we do not intimate that abstention in the face of a preemption claim under the Federal Power Act may never constitute an abuse of discretion, abstention should perhaps more often obtain in cases presenting a question of preemption under the Federal Power Act than would be so in cases presenting other types of federal preemption claims.

In deciding to abstain, the district court focused upon a variant of abstention known as *Burford* abstention. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), concerned an attack upon the validity of an order of the Texas Railroad Commission granting a permit to drill oil wells. Jurisdiction of the federal district court was invoked because of diversity and a federal due process claim. Although federal jurisdiction was assumed to exist, the Supreme Court nevertheless agreed with the district court's decision that it should decline to exercise such jurisdiction. The Supreme Court explained that the Texas regulatory system governing oil conservation was complex and a matter of great public importance. The Court noted that Texas had established in its own state courts a system of "thorough judicial review" of the Railroad Commission's orders and that this review system was concentrated in the state courts of Travis County. 319 U.S. at 325, 63 S.Ct. at 1103. Texas courts were perfectly capable of giving relief. Should the federal courts exercise their jurisdiction, delay, confusion and "needless federal conflict with the state policy [would be] the inevitable product of this double system of review." *Id.* at 327, 63 S.Ct. at 1104. Moreover, ultimate re-

view of the federal questions remained fully preserved in the United States Supreme Court. *Id.* at 334, 63 S.Ct. at 1107–08.

Later, in *Alabama Public Service Commission v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), the Supreme Court determined that abstention was required in a challenge to a state Railroad Commission order. The plaintiff railroad in this case had been denied permission by the state commission to discontinue intrastate passenger service. The railroad filed suit in federal court, basing jurisdiction on diversity and a federal claim of confiscation. To support its invocation of abstention, the Supreme Court reasoned:

As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts," is convinced that the asserted federal right cannot be preserved except by granting the "extraordinary relief of an injunction in the federal courts." Considering that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts.

341 U.S. at 349, 71 S.Ct. at 768 (citations omitted).

*Burford* and *Alabama Public Service Commission,* while resting federal jurisdiction in part upon federal questions, also involved questions of state law. Although NOPSI argues that these abstention cases can thus be distinguished from the instant case, where no state law issue seems relevant, we find that the absence of a state law claim in the instant case is not fatal to

*Burford* abstention. The motivating force behind *Burford* abstention is not the desire to avoid a state law question, but rather, a reluctance to intrude into state proceedings where there exists a complex state regulatory system. As we have previously observed, "*Burford* -type abstention requires neither the presence of a state issue nor unclarity in pertinent state law. Rather, a court abstaining under *Burford* relegates a federal issue to state court adjudication because the federal issue touches some overriding state interest." *B.T. Inv. Managers v. Lewis*, 559 F.2d 950, 955 (5th Cir. 1977).

■ Given the facts before us and the structure of the Federal Power Act, which leaves jurisdiction over retail rates to the states, we conclude that the district court did not abuse its discretion in finding *Burford* abstention appropriate here. As with the regulatory scheme at issue in *Burford*,

the regulation and adjustment of local utility rates is of paramount local concern and a matter which demands local administrative expertise. The regulatory scheme is complex. In addition, the Louisiana state courts are fully able to address NOPSI's complaints about Council actions: appeals from Council orders are to be filed with the Civil District Court for the Parish of Orleans. Significantly, NOPSI has not denied that adequate state court remedies exist. That the state courts often capably address claims such as that raised by NOPSI is apparent from the number of state court cases upon which NOPSI relies to prove its preemption claim substantial. Nor would federal abstention foreclose the United States Supreme Court from entertaining NOPSI's preemption claim should it wind its way up through the state courts, as is demonstrated by the path of the recent *Nantahala* case.[1]

1. The question of *Burford* abstention in the face of a preemption claim involving the Federal Power Act has led the circuit courts to various results. In *Aluminum Co. of America v. Utilities Commission of North Carolina*, 713 F.2d 1024 (4th Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984), Alcoa and Tapoco sought an injunction from the federal district court against a local council order which considered Alcoa subsidiaries to be a single system for purposes of calculating the rate base. Alcoa and Tapoco claimed that the order "allegedly interfere[d] with the operation of a federal regulatory scheme and impermissibly burden[ed] interstate commerce." 713 F.2d at 1025. The district court abstained. The Fourth Circuit affirmed, explaining that the case involved the "quintessential *Burford* setting of a complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." *Id.* at 1029. The court continued: "The usual rule of comity must govern; the district court properly exercised its discretionary power to withhold relief so as to avoid needless obstruction of North Carolina's domestic policy." *Id.* The court declined to adopt a *per se* rule against abstention whenever a federal plaintiff asserted a preemption claim. In *American Electric Power Co. v. Kentucky Public Service Commission*, 787 F.2d 588 (6th Cir. 1986), a public utility company challenged a local commission's rate order in both state and federal courts. FERC had accepted a unit power agreement as a rate schedule. When the utility company tried to pass through its cost to

retail rate payers, the local commission balked, refusing to increase retail rates. The *per curiam* opinion of the court rejects *Burford* abstention in favor of *Younger* abstention. However, the two concurring opinions by Judges Contie and DeMascio invoke *Burford* abstention, noting that although *Burford* did involve the review of a state law question, the Supreme Court focused not on the presence of this state law issue, but instead on the disruption of a state policy. Here, as in *Burford*, there existed a complex state regulatory scheme which would be disrupted by federal court review, and there also existed a state created forum with expertise.

Not all courts facing preemption claims have chosen to abstain. Perhaps the strongest argument against abstention can be found in a footnote in a Ninth Circuit opinion, which notes, "[i]f a preemption claim is well-founded, therefore, *Burford* abstention cannot be appropriate." *International Brotherhood of Electric Workers, Local Union No. 1245 v. Public Service Commission of Nevada*, 614 F.2d 206, 212 n.1 (9th Cir.1980). Although the Ninth Circuit's language is strong, it must be noted that the case does not involve the Federal Power Act with its preservation of state jurisdiction over retail rates. In addition, the court's apparent *per se* rule against *Burford* abstention appears to be unnecessary dictum in the context of the case, where no state policy was at issue, and where federal review would not disrupt the state regulation.

*Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission*, 791 F.2d 1111 (3d Cir.1986), involved the Pennsylvania statutory

■ Moreover, on these facts, abstention seems appropriate under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2] *Younger* and its progeny "espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The doctrine is driven by

> the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 601, 95 S.Ct. 1200, 1206–07, 43 L.Ed.2d 482 (1975) (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750). Although originally applied to pending state criminal prosecutions, "[t]he policies underlying *Younger* are fully applicable to non-criminal judicial proceedings when important state interests are involved." *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. As the Supreme Court has recently emphasized, abstaining from a pending administrative proceeding against a school, "it is perfectly natural for our cases to repeat time and time again that the *normal* thing to do when federal courts are asked to enjoin pending state proceedings in state courts is not to issue such injunctions." *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (quoting *Younger,* 401 U.S. at 45, 91 S.Ct. at 751). *Younger* ab-

---

framework under which retail rates were established for natural gas companies. One utility company sought to pass through the costs passed onto it by FERC-approved tariffs, and the local utility council denied the pass through. The company brought suit in state and federal courts, alleging to the federal district court that the local order and the Pennsylvania statute were preempted by the Natural Gas Act. The district court abstained. Relying in part on our prior opinion in this case, the Third Circuit reversed, reconciling its opinion with *Aluminum Co.* by noting that the case before it raised a direct conflict between state and federal statutes. Finally, in the recent case of *Middle South Energy, Inc. v. Arkansas Public Service Commission,* 772 F.2d 404 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986), Middle South Energy sought the issuance of an injunction which would prevent the state public service commission from conducting further proceedings into the utility's contracts regarding the purchase of nuclear power. The same FERC order at issue in the instant case had assigned the cost of a nuclear power plant amongst four companies. The state commission did not refuse to recognize the FERC-determined costs, but instead tried to avoid the underlying contracts to purchase nuclear power. The Eighth Circuit refused to abstain, reasoning that abstention is inappropriate when the proceeding—the commission's attempt to void the underlying contracts to purchase nuclear power—is beyond the state's authority. *Middle South Energy* can be distinguished from the instant case, as NOPSI is not alleging in the instant suit that the Council's proceeding is beyond its authority. No one disputes that the

Council can set retail rates. NOPSI only asks that the Council recognize FERC-determined costs within the Council's rate-making proceeding.

**2.** *Younger* abstention is most typically invoked in situations where the state has initiated an action against a state defendant who subsequently seeks federal relief—a procedural model which NOPSI does not fit. The Third Circuit has concluded that unless the state has initiated the state proceeding, the state interest is not sufficiently important to justify abstention. *Johnson v. Kelly,* 583 F.2d 1242, 1249 (3d Cir. 1978). This view, however, has been "vigorously criticized," 17 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4254 at 216 (Supp. 1986), (hereinafter "Wright and Miller"), and we decline to adopt it. Rather, we agree with a recent commentator that "state initiation of the proceeding is a poor measure of the state interest" in its substantive policies. Comment, *Limiting the Younger Doctrine: A Critique and Proposal,* 67 Calif,L.Rev. 1318, 1344 (1979). Thus, we do not find the procedural posture of NOPSI in the state proceeding to defeat the application of *Younger* abstention. We find support for our conclusion in *American Electric Power Co.,* where the Sixth Circuit abstained under *Younger* in circumstances similar to ours, despite the fact that the federal plaintiff was procedurally also a plaintiff in the pending state action. *But see Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission,* 791 F.2d 1111 (3d. Cir.1986) (court refuses to abstain under *Younger* in part because the federal plaintiffs had been state plaintiffs below).

stention can be applied to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings, the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Commission*, 106 S.Ct. at 2723. We thus must answer three relevant questions: (1) whether the state proceedings "constitute an ongoing state judicial proceeding;" (2) whether the proceedings "implicate important state interests;" and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521.

Turning our attention to these inquiries, we find that the administrative proceeding before the Council constitutes an ongoing judicial proceeding under *Middlesex* and *Ohio Civil Rights Commission*, as it is appealable to the Civil District Court for the Parish of Orleans, and is thus "within the appellate jurisdiction" of the Louisiana courts. *Ohio Civil Rights Commission*, 106 S.Ct. at 2723. The interest of the Council of New Orleans in setting retail rates is clearly important here: indeed, jurisdiction over retail rates is preserved to the states by the terms of the Federal Power Act. Finally, we find that through the appellate process, NOPSI would have a full and fair opportunity to litigate its federal claims. As in *Ohio Civil Rights Commission*, NOPSI cites no authority indicating that state review cannot be had of its claims. 106 S.Ct. at 2724. As there is no "bad faith, harassment or other exceptional circumstances" which dictate to the con-

trary, the district court's decision to abstain could be grounded on *Younger*.[3]

For the above reasons, we conclude that the district court's decision to abstain on the instant facts was a proper exercise of discretion. Given the above, our initial opinion reversing the district court is withdrawn in part, and the order of the district court dismissing NOPSI's claim is AFFIRMED. The mandate shall issue forthwith.

---

**3.** In addition, the Council at the time NOPSI sought injunctive relief from the district court had not yet taken any definitive action on NOPSI's May 17, 1985, rate increase application. Concerns of federalism lead us to treat challenges to anticipated state agency action "with special skepticism." Wright and Miller § 3532.-6. In *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 244, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952), the Supreme Court refused to address the merits of a claim it described as seeking a declaratory judgment for the purpose of *"guard[ing] against the possibility* that [the local commission] would attempt to prevent re-

spondent from operating under its certificate from the Interstate Commerce Commission" (emphasis in original). The Court observed:

as the declaratory proceeding is here invoked, it is even less appropriate because, in addition to foreclosing an administrative body, it is incompatible with a proper federal-state relationship. The carrier, being in some disagreement with the State Commission, rushed into federal court to get a declaration which either is intended in ways not disclosed to tie the Commission's hands before it can act or has no purpose at all.

*Id.* at 247, 73 S.Ct. at 242.