**John D. KELLY, Plaintiff,**

**v.**

**Charles S. LOPEMAN, et al.,
Defendants.**

**No. C–3–85–930.**

United States District Court,
S.D. Ohio, W.D.

July 27, 1987.

**1102**

Thomas Weeks, Ohio State Legal Services Ass'n, Columbus, Ohio, Carolyn L. Carter, Anita Myerson, Cleveland, Ohio, James M. Daniels, Rural Legal Aid Soc., Springfield, Ohio, for plaintiff.

John F. Kozlowski, Lawrence J. Hackett, Asst. Attys. Gen., Columbus, Ohio, for defendants.

DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART DEFENDANTS' MOTIONS TO DISMISS (DOCS. #5 AND 6); THE DECISION OF THIS COURT SUSTAINING DEFENDANTS' MOTIONS TO DISMISS ON THE BASIS OF *YOUNGER* ABSTENTION IS AN OPINION ONLY; THE CLERK OF COURTS IS SPECIFICALLY DIRECTED NOT TO ENTER JUDGMENT; WITHIN 14 DAYS OF RECEIPT OF THIS DECISION, THE PLAINTIFF MAY FILE A MOTION FOR RECONSIDERATION; IF NO MOTION FOR RECONSIDERATION IS RECEIVED WITHIN THE 14–DAY PERIOD, THE COURT WILL DIRECT THE CLERK TO ENTER JUDGMENT

RICE, District Judge.

This action, which has previously been certified by this Court as a class action

pursuant to Fed.R.Civ.P. 23(b)(2) (Doc. # 24), is brought against the Defendants in their capacities as the Administrator and members of the Board of Review of the Ohio Bureau of Employment Services. The class of Plaintiffs seeks a declaratory judgment that the Defendants' policies and practices of denying all unemployment compensation claimants the right to a face-to-face referee hearing violate the due process and equal protection clauses of the fourteenth amendment and the fair hearing provision of 42 U.S.C. § 503(a)(3). As further relief, the Plaintiffs seek a preliminary and permanent injunction requiring the Defendants to afford a meaningful opportunity to face-to-face referee hearings to the Plaintiffs. The Defendants have moved this Court for an Order dismissing the Plaintiffs' claims pursuant to Fed.R.Civ.P. 12 (Docs. # 5 and 6). The grounds on which the Defendants base their Motions to Dismiss include (1) that the Plaintiffs' claims are barred by the eleventh amendment; (2) that the Plaintiffs have failed to state a claim upon which relief can be granted; (3) that the Plaintiffs' claims are moot; and (4) that 42 U.S.C. § 503 does not provide a private right of action, and that, therefore, this Court is without subject matter jurisdiction to hear the Plaintiff's claims. For the reasons that follow, the Court overrules the Defendants' Motions on the preceding four grounds. However, the Defendants' fifth ground for dismissal is that the Court should abstain under the various abstention doctrines. Because the Court finds that this case properly falls within the *Younger* abstention doctrine, the Motions to Dismiss on abstention grounds are sustained.

## I. DISCUSSION

### A. *Eleventh Amendment*

■ The first ground for dismissal which the Defendants raise is that the Plaintiffs are barred by the eleventh amendment[1] from proceeding against the Defendants in their capacities as Administrator and members of the Board of Review of the Ohio Bureau of Employment Services. The eleventh amendment's jurisdictional bar has been extended to include suits brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The eleventh amendment also prevents actions against an agency or department of a state. *Florida Department of Health v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Defendants' argument, however, is not well taken for the reason that this action falls squarely within the *Ex Parte Young* exception to the eleventh amendment. In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that the eleventh amendment did not bar a suit alleging that state officials acted contrary to the United States Constitution. The holding in *Ex Parte Young* was based on the "fiction" that "an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.' Since the State could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct.'" *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984) (quoting *Ex Parte Young, supra*, 209 U.S. at 160, 28 S.Ct. at 454).

It has become clear from the cases following *Ex Parte Young*, that the eleventh amendment will not bar suit where same is brought against state officials in their official capacities for violations of the United States Constitution, seeking prospective injunctive relief and not monetary relief. *See, e.g., Pennhurst State School and Hospital v. Halderman, supra; Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39

1. The eleventh amendment provides:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

L.Ed.2d 662 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062 (6th Cir.1984).

In the suit brought by these Plaintiffs, the suit is against state officials for violations of the United States Constitution (due process and equal protection) and seeks no monetary but only declaratory and prospective injunctive relief. Further, the suit is brought against the Defendants in their official capacities and not against the agency itself. The eleventh amendment does not bar the Plaintiffs' actions.

### B. Rule 12(b)(6)—Failure to State a Claim

■ The Defendants' second argument in favor of dismissal is that the Plaintiffs have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court must accept as true the facts as pleaded in the Complaint and can only dismiss the Complaint if it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The Defendants argue that the telephone hearings are fair, as evidenced by the favorable result achieved by John Kelly in his telephone hearing.[2] However, the fact that Kelly received a favorable decision after a telephone hearing does not in any way indicate that the hearing was fair to Kelly or was or will be fair to any of the other class members.

Moreover, the requirements of due process and those of the "fair hearing" provision of 42 U.S.C. § 503(a) are co-extensive. Thus, whether the statutory "fair hearing" requirement has been met is tested by the same standards as constitutional procedural due process. *Ross v. Horn*, 598 F.2d 1312, 1318 n. 4 (3d Cir.1979); *Camacho v. Bowling*, 562 F.Supp. 1012 (N.D.Ill.1983). "The cornerstones of due process, in its procedural sense, are notice and an opportunity for a fair hearing." *Camacho v.*

*Bowling, supra* at 1020. A factual issue which will need to be addressed in the determination of whether the telephone hearings afford unemployment compensation claimants due process is whether the policy provides claimants an opportunity to adequately present documents, in support of their case, during the course of a telephone hearing. Accepting the allegations in the Plaintiffs' Complaint as true, the Court concludes that the Plaintiffs have sufficiently stated a claim upon which relief can be granted.

### C. Mootness

■ The Defendants' third argument in favor of dismissing the Plaintiffs' Complaint is that the case is moot because John Kelly received a favorable decision on his claim for unemployment benefits prior to this Court's decision certifying the class. The Board of Review issued its decision awarding benefits to Kelly four days after the filing of Kelly's Complaint. The Plaintiffs filed their "Motion for Conditional Class Certification" (Doc. # 3) shortly after the filing of their Complaint and prior to receiving the Board of Review's decision awarding Kelly benefits.

The Supreme Court in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), recognized that

> [t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 402 n. 11, 95 S.Ct. at 559 n. 11. The Sixth Circuit relied upon the language in *Sosna v. Iowa* in circumstances similar to those present in the instant case. In

---

**2.** John Kelly, on behalf of himself and all others similarly situated filed this action on December 16, 1985. On December 17, 1985, Kelly went forward with his telephone hearing and received a favorable decision on his claim for unemployment compensation. Subsequently, on April 10, 1986, the instant suit was certified as a class action.

*Blankenship v. Secretary of H.E.W.*, 587 F.2d 329 (6th Cir.1978), an action brought to challenge delays in the scheduling of administrative hearings, the named plaintiffs had received hearings prior to the district court's decision granting class certification. The defendants sought to have the case dismissed as moot, but the court held that

> [t]he claims of delay which the plaintiffs advance, however, epitomize the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance. Thus, the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants.... [R]efusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses.

*Id.* at 333. The court therefore held that the class members retained a live interest in the case so that the class action should not be declared moot. The class certification would "relate back" to the date of the filing of the complaint, when the named plaintiffs had not yet received hearings or hearing decisions.

This Court concludes that the Sixth Circuit's reasoning in *Blankenship* is directly applicable to the instant action. Unless the class certification relates back to the date of the filing of the complaint, the Defendants could effectively moot the class action by mooting the individual named plaintiff's claim, either by awarding benefits or by granting the named plaintiff the opportunity for a face-to-face hearing. Accordingly, the class certification must relate back to the date of the filing of the Complaint. The class action is not moot.

### D. *Private Right of Action*

■ The fourth argument raised by the Defendants in their Motions to Dismiss is that 42 U.S.C. § 503 does not provide a private right of action and that, therefore, this Court has no jurisdiction to hear the Plaintiffs' law suit. The Court concludes that the Defendants' argument is contrary to established case law.

The Social Security Act (Act) establishes a federal program designed to assist states in the administration of their unemployment compensation programs. Under the Act, 42 U.S.C. §§ 501–504, states whose programs satisfy certain requirements set forth in the Act qualify for federal funding. These funds are used to pay the costs of administering the state's unemployment compensation program. The Secretary of Labor is responsible for monitoring funding to the states. No grant may be made to a state for a fiscal year unless the Secretary certifies the amount to be paid. 42 U.S.C. § 502(a). The Secretary may not certify payment of federal funds unless he first determines that the state's program conforms to federal requirements. In particular, § 303(a) of the Act, 42 U.S.C. § 503(a), requires that the state provide certain procedural safeguards for individuals submitting claims for benefits under the state's unemployment compensation program. That section provides in pertinent part:

> The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—
>
> \*    \*    \*    \*    \*    \*
>
> (3) opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied.

It is this section of the Act which the Plaintiffs allege has been violated.

The Supreme Court, as well as several lower courts, have recognized a right of action on behalf of private parties under § 503. In *California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), a class action initiated by two unemployment insurance claimants alleging violations of due process and § 503, the Supreme Court enjoined the enforcement of the California Unemployment Insurance scheme because

it was inconsistent with § 503. Other courts, following *Java*, have permitted individuals to bring a cause of action directly under § 503. *See e.g., Wilkinson v. Abrams*, 627 F.2d 650 (3d Cir.1980) (holding that regulations promulgated by the Secretary of Labor were not inconsistent with § 503); *Ross v. Horn*, 598 F.2d 1312 (3d Cir.1979) (holding that New Jersey's processing of suspected unemployment compensation fraud cases did not violate the "when due" requirement of § 503); *Losey v. Roberts*, 570 F.Supp. 1465 (N.D.N.Y. 1983) (holding that the plaintiffs' complaint alleging a violation of the "when due" requirement of § 503 was sufficient to survive a motion to dismiss). Indeed, there are a number of decisions from the Southern District of Ohio holding that unemployment compensation claimants have a private cause of action for violations of § 503. *See e.g., Robinson v. Campbell*, No. C-2-75-638 (S.D.Ohio 1977) (Duncan, J.); *Ross v. Giles*, No. C-2-81-902 (S.D.Ohio 1984) (Kinneary, J.); *Benzo v. Steinbacher*, No. C-2-85-1101 (S.D.Ohio 1986) [available on WESTLAW, 1986 WL 20642] (Kinneary, J.).

Finally, the Supreme Court recently rejected the notion that federal district courts are without subject matter jurisdiction to hear statutory or constitutional challenges to federal guidelines which regulate state benefit programs. In *International Union, U.A.W. v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), the Secretary of Labor argued that 19 U.S.C. § 2311(d), which provides benefits to workers laid off because of competition from imports, irrevocably commits to state agencies all claims relating to trade readjustment allowance benefits. The Court disagreed:

> Indeed, we have frequently upheld a contrary principle: that although review of individual eligibility determinations in certain benefit programs may be confined by state and federal law to state administrative and judicial processes, *claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court.*

106 S.Ct. at 2530 (emphasis added). The Court cited, among other cases, *California Department of Human Resources v. Java, supra*, in support.

In light of the foregoing, this Court concludes that a private right of action does exist under § 503. Accordingly, the Defendants' argument is not well taken.

### E. *Abstention*

The fifth and final argument raised in support of dismissal is that the Court should abstain from exercising jurisdiction in this case. The Defendants contend that this Court should abstain under any one of three abstention doctrines—*Pullman* abstention, *Burford* abstention, or *Younger* abstention.

■ The first two of the abstention doctrines can be dealt with in short fashion. *Pullman* abstention is appropriate "where the resolution of uncertain state law issues could moot a federal constitutional issue or cause it to be presented in a different posture." *Ada-Cascade Watch Company v. Cascade Resource Recovery, Inc.*, 720 F.2d 897 (6th Cir.1983). In order for abstention to be appropriate, the state issues must be uncertain and ambiguous. *Wisconsin v. Constantineau*, 400 U.S. 433, 438-39, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Here, abstention under the *Pullman* abstention doctrine is inappropriate because there have been no uncertain issues of state law or ambiguous state statutes which have been identified.

■ Abstention under the *Burford* abstention doctrine would also be inappropriate. *Burford* abstention, which derives its name from *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is appropriate where the "exercise of federal review of the [state law] question in a case and similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976).

The cases following *Burford v. Sun Oil Company* have made it clear that abstention is not appropriate merely because resolution of a federal question may result in the overturning of a state policy. *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978). The state must exhibit an overriding interest in the subject matter. This is most often demonstrated by the existence of a complex state regulatory scheme which would be disrupted by federal review. Additionally, for *Burford* abstention to apply, the state must centralize review in a forum with specialized competence. *Ada–Cascade Watch Company, supra,* at 903. While the state of Ohio certainly has an interest in the administration of its unemployment compensation scheme, the interests involved herein are not exclusively state interests. The Plaintiffs' allege violations of due process and equal protection, as well as a violation of the "fair hearing" requirement of 42 U.S.C. § 503. These are clearly federal interests. *See Association for Retarded Citizens of North Dakota v. Olson,* 713 F.2d 1384 (8th Cir.1983) (*Burford* abstention is inappropriate in cases involving federal statutes and substantial federal constitutional rights). Moreover, review of decisions of the Unemployment Compensation Board is not reserved for a specialized court. Rather, appeals are made to the Courts of Common Pleas, constitutionally established courts of general jurisdiction. Ohio Rev.Code § 4141.28(*O* ). Because neither of the two factors required for *Burford* abstention (a complex state regulatory scheme and centralized review in a forum with specialized competence) is present, this Court will not abstain under that branch of the abstention doctrines.

The Defendants' final argument is that this Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine. The *Younger* abstention doctrine gets its name from *Younger v. Harris* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation where an injunction is necessary to prevent great and irreparable injury. Central to the Court's holding was its consideration of the proper respect for the fundamental role of states in the federal system. In light of the Court's concern for comity and federalism, it wrote that it was

> perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions.

*Id.* at 45, 91 S.Ct. at 751.

In the cases following *Younger v. Harris,* the Supreme Court has recognized that the same concerns for comity and federalism apply to pending state proceedings other than criminal matters. *Younger* abstention has been found applicable to civil proceedings involving important state interests. *See, e.g., Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state's interest in enforcement of its public nuisance statute); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state's interest in enforcement of its judicial contempt process); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil enforcement to collect fraudulently obtained public benefits); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state's interest in protecting children from abusive parents). In *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court held that federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate state supreme court.

The Supreme Court's most recent decision regarding the principles of *Younger* abstention, *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), involved a state administrative proceeding. In *Dayton Christian Schools,* the federal plaintiff (Dayton Christian Schools, Inc.) sought to enjoin a pending state administrative proceeding brought

against it by the Ohio Civil Rights Commission. The Supreme Court held that under the principles established in *Younger v. Harris* and its progeny, the district court should have abstained from exercising jurisdiction. Justice Rehnquist concluded that the state's interest in eliminating prohibited sex discrimination was a "sufficiently important state interest" to bring the case within the ambit of the *Younger* doctrine. 106 S.Ct. at 2723. He further found that there was no reason to believe that Dayton Christian Schools would be unable to raise its constitutional challenges, either in the administrative proceeding or in the judicial review of the administrative proceeding afforded by state law in the Court of Common Pleas.

■ In light of *Middlesex County Ethics Committee, supra,* and *Dayton Christian Schools, supra,* it is clear that a court faced with a potential *Younger* abstention issue must consider three relevant questions: (1) whether the state proceedings "constitute an ongoing state judicial proceeding;" (2) whether the proceedings "implicate important state interests;" and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex County Ethics Committee,* 457 U.S. at 432, 102 S.Ct. at 2521.

■ This Court concludes that the answer to each of the above questions, within the factual and legal confines of this case, is in the affirmative. Accordingly, abstention under the *Younger* doctrine is required. The class of Plaintiffs as certified by this Court includes all unemployment compensation claimants who have been or will be denied the right to a face-to-face hearing. Thus, the Plaintiffs seek to enjoin telephone hearings which are currently pending before the Ohio Bureau of Employment Services Board of Review. Decisions of the Board of Review are appealable to the Common Pleas Courts. Ohio Rev.Code § 4141.28(*O*). The pending state administrative proceedings involved herein are thus within the appellate jurisdiction of the state court system. *Dayton Christian Schools,* 106 S.Ct. at 2723. *See also New Orleans Public Service v. City of New Orleans,* 798 F.2d 858 (5th Cir.1986) (administrative proceeding was appealable to the Civil District Court for the Parish of Orleans, and thus within the appellate jurisdiction of the Louisiana courts). As such, they constitute pending judicial proceedings.

*Younger* abstention is appropriate when important state interests are implicated. The Defendants argue that the administration of the state's unemployment compensation system is an important state interest. The Plaintiffs, however, contend that the Ohio unemployment compensation system is "a creature of, and governed by, federal law." This Court, cognizant of the cooperative federal-state unemployment compensation system, concludes that the federal statutory scheme which encourages the states to establish unemployment compensation programs through federal funding, does not in any way diminish the state interest involved. Ohio's interest in the administration of its unemployment compensation system is a sufficiently important state interest to bring the case within the ambit of the *Younger* doctrine. Moreover, this Court's reading of the decision in *Dayton Christian Schools* compels it to conclude that federal courts must abstain when an important state interest is involved, provided that the other requirements for *Younger* abstention are present. In other words, when presented with a case involving a pending state judicial proceeding in which the federal plaintiff has an opportunity to raise constitutional challenges, see *infra,* and involving an important state interest, the federal court is not permitted to weigh or balance the competing federal and state interests (in order to determine which is the more important), but must abstain. The Supreme Court's decision in *Dayton Christian Schools* is instructive in this regard. In *Dayton Christian Schools,* the district court was presented with two federally created interests. The school argued that the exercise of jurisdiction over it by the state violated the schools' first amendment rights. A second federal interest, the elimination of sex discrimination, was also present.

There can be little argument that the elimination of sex discrimination in employment is an important federal interest. Indeed, Congress enacted Title VII of the Civil Rights Act of 1964 in order to provide a remedy to victims of employment discrimination. Notwithstanding the presence of these federal interests, however, the Supreme Court in *Dayton Christian Schools* held that Ohio's interest in the elimination of prohibited sex discrimination was a sufficiently important state interest to require abstention under the *Younger* doctrine. The Court did not weigh or balance the competing federal and state interests, but rather ordered abstention because the other requirements of *Younger* abstention were present. Accordingly, in light of Ohio's important interest in the administration of its unemployment compensation system, this Court must abstain.

The final consideration in a *Younger* abstention analysis is whether the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. Ohio Rev.Code § 4141.28(*O*) provides for appeal from the Ohio Bureau of Employment Services Board of Review to the Courts of Common Pleas. The Common Pleas Court is empowered by § 4141.28(*O*) to reverse the Board's decision "if the Court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence...." Thus, an unemployment compensation claimant is able to raise constitutional challenges in the Court of Common Pleas on appeal from the Board's decision. Further, it is clear that Ohio courts do entertain constitutional challenges in appeals governed by § 4141.28(*O*). *See, e.g., Henize v. Giles,* 22 Ohio St.3d 213, 490 N.E.2d 585 (1986) (Supreme Court of Ohio, recognizing that its analysis of the state's hearing procedures in unemployment compensation proceedings must be conducted with reference to the due process clause of the fourteenth amendment, held that non-lawyers who represented parties at unemployment compensation hearings were not engaged in the unauthorized practice of law); *Bohacek v. Administrator, Bureau of Employment Services,* 9 Ohio App.3d 59, 458 N.E. 2d 408 (1983) (holding that the words "filing" and "clerk" as they appear in Ohio Rev.Code § 4141.28(*O*) are not unconstitutionally vague or indefinite).

The proper action for a court to take when it concludes that abstention under the *Younger* doctrine is appropriate is to dismiss the plaintiff's action. The notion of comity, which underlies the *Younger* abstention doctrine, includes a

> proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). "Minimal respect for the state processes, of course, precludes any presumption *that the state courts will not safeguard federal constitutional rights." Middlesex County Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (emphasis in original). The Plaintiffs' action is therefore dismissed, and the Plaintiffs will be required to raise their constitutional challenges in the state courts, where, it is presumed, they will be afforded a full and fair opportunity to make their constitutional arguments.[3]

**3.** The Plaintiffs have submitted to this Court for its consideration Judge Holschuh's decision in *Cottrell v. Lopeman,* No. C–2–85–1310 (S.D.Ohio, April 2, 1987). The *Cottrell* case, like the instant case, involves alleged violations of the due process and equal protection clauses and the "fair hearing" provision of 42 U.S.C. § 503. Judge Holschuh, in overruling the defendant's motion to dismiss, held that *Younger* abstention was inappropriate. This Court, to the extent that the facts of the *Cottrell* case are on point with those of this case, simply disagrees with the decision reached by Judge Holschuh.

The Plaintiffs also seek to rely upon Judge Kinneary's decision in *Morrison v. Steinbacher,* No. C–2–84–1601 (S.D.Ohio, March 27, 1986) in which the court held, *inter alia,* that the *Younger* abstention doctrine did not apply to the plaintiffs' action brought against the Ohio Bureau of Em-

## II. CONCLUSION

In sum, the Court concludes that the Plaintiffs' action is not barred by the eleventh amendment, nor have the Plaintiffs failed to state a claim upon which relief can be granted. The Court further concludes that the cause of action is not moot and that a private right of action does exist under 42 U.S.C. § 503(a). The Defendants' Motions to Dismiss based upon the *Pullman* and *Burford* abstention doctrines are also overruled. However, the Defendants' Motions to Dismiss on the basis of *Younger* abstention are sustained. The Clerk of Courts is directed not to enter judgment. Within 14 days of receipt of this decision, the Plaintiffs may file a motion for reconsideration. If no such motion is received, the Clerk of Courts will be directed to enter judgment in favor of the Defendants.

ployment Services. The decision in *Morrison,* however, was rendered prior to the Supreme Court's decision in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). As discussed in the text above, *Dayton Christian Schools* significantly expanded the scope of the *Younger* abstention doctrine. Accordingly, this Court finds *Morrison v. Steinbacher* unpersuasive.