**NEW ORLEANS PUBLIC SERVICE, INC., and System Energy Resources, Inc., Plaintiffs–Appellants,**

v.

**The COUNCIL OF the CITY OF NEW ORLEANS, Sidney J. Barthelemy, Joseph I. Giarrusso, Bryan Wagner, Lambert C. Boissiere, Jr., Michael Early, James Singleton, and Ulysses Williams, Defendants–Appellees.**

**No. 87–3049.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1987.

Rehearing Denied Jan. 19, 1988.

Herschel L. Abbott, Jr., Jones, Walter, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., Joseph L. Blount, Jackson, Miss., Thomas O. Lind, Wm. D. Meriwether, Jr., New Orleans, La., for plaintiffs-appellants.

Clinton A. Vince, Washington, D.C., Bruce E. Naccari, Beverly Jackson Zervigon, Augustine, Bagert, McConduit & Hilferty, Olka Jones, II, City Atty., New Orleans, La., L. John Osborn, Bernhardt K. Wruble, Nancy A. Wodka, Washington, D.C., for defendants-appellees.

Before GOLDBERG, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

New Orleans Public Service, Inc. (NOPSI), and System Energy Resources, Inc. (SERI), two privately held utility companies, appeal the dismissal of their suit to enjoin the New Orleans City Council from forcing the companies to absorb the costs of an ill-fated nuclear power plant. Because we agree with the district court that the controversy is not ripe for resolution, we affirm.

## I. BACKGROUND

SERI, formerly Middle South Energy, Inc., owns ninety percent of Grand Gulf 1, a nuclear generating station. Power from Grand Gulf 1 is wholesaled to NOPSI and other utility companies, which resell the power to consumers. NOPSI, Louisiana Power & Light, Mississippi Power & Light,

and Arkansas Power & Light, are retail utility companies wholly owned by Middle South Utilities, Inc., a public utility holding company. Middle South Utilities also wholly owns SERI.

In 1974, NOPSI committed itself to sharing the costs of a nuclear power plant for the Middle South system. During the years of the plant's construction, it became clear that demand would be less and costs drastically more than originally anticipated. In 1982, the Middle South companies submitted to the Federal Energy Regulatory Commission (FERC) a Unit Power Sales Agreement (UPSA) allocating 29.8 percent of Grand Gulf costs to NOPSI. In hearings before an administrative law judge, the public utility regulating bodies of the affected state entities appeared and argued that their consumers should be required to pay for less of the by-now undesirable nuclear energy.

In 1985 FERC issued an order modifying the UPSA to provide for the following allocation: 17 percent to NOPSI, 14 percent to Louisiana Power & Light, 33 percent to Mississippi Power & Light, and 36 percent to Arkansas Power & Light. Opinion and Order Setting Just Reasonable and Non-Discriminatory Rates, 31 F.E.R.C. (CCH) 61,305 (June 13, 1985) (Opinion No. 234). The D.C. Circuit Court of Appeals affirmed the FERC order, but granted rehearing en banc to reconsider whether the specific cost figures were reasonable. *Mississippi Industries v. FERC*, 808 F.2d 1525 (D.C.Cir.), *reh'g en banc granted on other grounds*, 814 F.2d 773 (D.C.Cir.1987), U.S. *appeal pending.* [1] The New Orleans City Council, which has state regulatory authority over NOPSI, participated in these appeals.

In May 1985, NOPSI applied to the New Orleans City Council for a retail rate increase to cover the wholesale costs stemming from Grand Gulf 1. The Council responded with Resolution No. R–85–636, initiating an investigation into "all aspects of NOPSI's prudence regarding its decisions to enter into its arrangements to purchase a portion of Grand Gulf 1 for the purpose of determining what portion, if any, of NOPSI's Grand Gulf 1 expense shall be assumed by its shareholders, rather than passed through to its retail ratepayers." Record Vol. 1 at 25 (the "Prudence Resolution"). NOPSI sought an injunction in federal district court. The district court dismissed the suit, determining that subject matter jurisdiction was lacking and abstention advisable. This Court initially reversed both determinations. *New Orleans Public Service, Inc. v. City of New Orleans*, 782 F.2d 1236 (5th Cir.1986), *modified on reh'g*, 798 F.2d 858, *cert. denied*, —— U.S. ——, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987). On rehearing, this Court affirmed the district court's decision to abstain, in order to avoid interfering with a comprehensive state regulatory scheme. *New Orleans Public Service, Inc. v. City of New Orleans*, 798 F.2d 858 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987) (*NOPSI I*).

In March 1986, the New Orleans City Council and NOPSI entered into a partial settlement under which NOPSI agreed to absorb about $51,200,000 of the Grand Gulf costs, and the Council allowed NOPSI to phase in an interim rate increase, subject to the results of the Council's prudence inquiry. In April 1987, the New Orleans City Council completed its record of the inquiry and began deliberations. NOPSI again sought an injunction from the federal district court, arguing that the Council was unreasonably delaying a decision and that

---

**1.** Allocation of costs from Grand Gulf 1 has stirred controversy in other states served by Middle South Utilities. Arkansas regulators, whose customers were to bear none of the costs under the original UPSA, announced hearings to consider voiding the FERC-ordered allocation. Middle South Energy obtained an injunction against these hearings, which the Eighth Circuit affirmed. *Middle South Energy, Inc. v. Arkansas Public Service Comm'n*, 772 F.2d 404 (8th Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). The Mississippi Supreme Court held that Mississippi regulators could prevent Mississippi Power & Light from passing on the FERC-allocated costs to retail customers. *Pittman v. Mississippi Public Service Comm'n*, 506 So.2d 978 (Miss.1987). The United States Supreme Court agreed to hear the case and stayed the Mississippi court's order pending appeal. *Mississippi Power & Light Co. v. State of Mississippi ex rel. Edward Lloyd Pittman, Attorney General*, —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987).

the Council's inquiry encroached on areas of exclusive FERC jurisdiction. By an amended complaint, NOPSI dropped its request for an injunction against the prudence inquiry itself. NOPSI requested only an injunction against any action by the New Orleans City Council that would force NOPSI's shareholders to absorb Grand Gulf costs in contradiction to FERC Opinion No. 234. The district court denied an injunction, on grounds of ripeness and abstention. The district court also dismissed SERI as a party, holding that SERI lacked standing. This appeal followed. At the time this case was orally argued, in September 1987, the New Orleans City Council had yet to act on the request for a permanent rate increase, although action was expected in late October 1987.

## II. DISCUSSION

■ NOPSI argues that the announced purpose of the New Orleans City Council's prudence inquiry intrudes upon an area under the exclusive jurisdiction of the FERC. The Federal Power Act grants the FERC authority to regulate the interstate wholesaling of electricity. 16 U.S.C. § 824(b)(1). This FERC jurisdiction is exclusive. *Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 106 S.Ct. 2349, 2357, 90 L.Ed.2d 943 (1986); *Gulf States Utilities Co. v. Alabama Power Co.,* 824 F.2d 1465, 1468 (5th Cir.1987). On the other hand, the states retain their traditional police power to regulate intrastate retail electricity sales. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n,* 461 U.S. 190, 205–06, 103 S.Ct. 1713, 1723, 75 L.Ed. 2d 752 (1983).

■ In a case decided while the New Orleans City Council's prudence inquiry was pending, the United States Supreme Court made it clear that, once the FERC has allocated wholesale power, a state regulatory body may not refuse to recognize that allocation. *Nantahala,* 106 S.Ct. at 2357–60. The state may not, for example,

find the allocation unreasonable and "trap" any extra costs by refusing to allow the utility to pass those costs on to consumers. *Nantahala,* 106 S.Ct. at 2358–59; *Appalachian Power Co. v. Public Service Comm'n of West Virginia,* 812 F.2d 898, 904–05 (4th Cir.1987). Local regulators may, however, consider whether other savings counterbalance any increases caused by the FERC order. *Nantahala,* 106 S.Ct. at 2357. The regulators may also phase in the increase over time. *Arkansas Power & Light Co. v. Missouri Public Service Comm'n,* 829 F.2d 1444, 1448–49 (8th Cir. 1987).

■ The New Orleans City Council resolution of October 1985 can certainly be interpreted as directed toward areas now off-limits to state regulators. However, at oral argument on the instant case, the attorney for the New Orleans City Council stated that the inquiry now accepted the FERC allocation as a "given" and was focussing on ways that NOPSI could reduce its other costs on the retail level. For example, it was argued that the New Orleans City Council was looking into the possibility that NOPSI could make "off-system sales" and operational economies. The New Orleans City Council assured the Court by the statement of its attorney, "We are not getting into the issue of whether Grand Gulf should have been constructed." [2]

■ A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical. *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985); *Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588–89, 92 S.Ct. 1716, 1719–20, 32 L.Ed.2d 317 (1972). The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Placid Oil Co. v. Federal Energy Regulatory Commission,*

---

2. In weighing a ripeness claim, an appellate court may properly consider events occurring after the trial court's decision. *Buckley v. Valeo,* 424 U.S. 1, 113–14, 96 S.Ct. 612, 680–81, 46 L.Ed.2d 659 (1976); *Blanchette v. Connecticut*

*General Ins. Corps,* 419 U.S. 102, 139–40, 95 S.Ct. 335, 356–57, 42 L.Ed.2d 320 (1974); 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* 3532.1 at 136–37 n. 39 (1984).

666 F.2d 976, 981 (5th Cir.1982). A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required. *Thomas*, 105 S.Ct. at 3333.

■ In the instant case, the New Orleans City Council has yet to disallow any part of NOPSI's request for a permanent rate increase. Some aspects of the New Orleans City Council's inquiry—for example, cost savings in other areas—are concededly within the Council's authority. The New Orleans City Council's attorney assured this Court that the inquiry accepts FERC-ordered wholesale rates as a given. This Court is not prepared to assume that the New Orleans City Council will go beyond its express statements and its legal authority. Should the New Orleans City Council act contrary to statements made in this Court, NOPSI could make use of estoppel and similar legal arguments.

NOPSI cites several cases holding that exposure to illegal proceedings may constitute sufficient present injury to make a case ripe. *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middle South Energy, Inc. v. Arkansas Public Service Comm'n*, 772 F.2d 404 (8th Cir. 1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986). *Middle South Energy* involved the same nuclear plant as in the instant case. Middle South obtained an order from a federal district court enjoining state regulators from conducting further proceedings to consider voiding wholesale contracts between the local utility and Middle South. *Middle South Energy*, 772 F.2d at 408. In *Ohio Civil Rights Comm'n*, a state regulatory agency had initiated an investigation into possible employment discrimination by a religious organization. The Supreme Court held that the challenge to the state agency's investigation was ripe, while the challenge to any future sanctions that the state agency might impose was not ripe. *Ohio Civil Rights Comm'n*, 106 S.Ct. at 2726 n. 4 (Stevens, J., concurring).

The instant case differs from *Middle South Energy* in that the New Orleans City Council has announced no intention to invalidate NOPSI's FERC-sanctioned wholesale arrangements. Moreover, NOPSI does not here seek relief from the New Orleans City Council's investigations and deliberations. NOPSI's original complaint requested an injunction against the "prudence inquiry" itself. However, NOPSI's amended complaint reads:

> Plaintiffs seek preliminary and permanent injunctive relief enjoining the Council of the City of New Orleans ... from entering an order, or otherwise taking any action, as a result of the "prudence" investigation initiated by the Council's Resolution No. R–85–636, which would have the effect of "trapping costs," that is, compelling NOPSI or its shareholders to absorb all or part of the costs allocated to NOPSI by the Federal Energy Regulatory Commission ("FERC") with respect to Unit No. 1 of the Grand Gulf Interstate Power Project ("Grand Gulf 1"), in which SERI owns a 90% undivided interest.

Record Vol. 4 at 675–76. Not only did NOPSI drop its request to enjoin the proceedings themselves, but the hypothetical nature of the relief sought springs out from the language of the complaint. Had the district court granted the injunction as requested, the result would have been an order "hanging in the air," ready to become effective only if the New Orleans City Council took one of several possible future actions.

The instant case resembles a recent Supreme Court case in which a California utility company challenged two state statutes: one imposing a statewide moratorium on new nuclear plants pending the solution of long-term waste storage problems; the other requiring the state regulatory agency to determine whether individual nuclear plants had adequate short-term storage. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). The Supreme Court held that the moratorium, because it applied regardless of the characteristics of individual plants and because it affected companies' present planning, was ripe for adjudication. *Pacific Gas & Electric*, 461 U.S. at 201–02, 103 S.Ct. at 1721. However, the Court held that the state investi-

gations of short-term storage were *not* ripe, because the state agency had yet to find any plant's storage inadequate, and the statute provided for case-by-case, fact-specific proceedings. *Pacific Gas & Electric,* 461 U.S. at 203, 103 S.Ct. at 1721–22. Similarly, the inquiry announced by the New Orleans City Council presents only a possibility of harm to NOPSI. If such harm occurs, the validity of the New Orleans City Council's action will depend on facts not yet in existence.

Moreover, the district court found that NOPSI will suffer no irreparable harm pending completion of the prudence inquiry. The New Orleans City Council granted NOPSI a temporary, phased-in rate increase with the March 1986 settlement. NOPSI has not argued before this Court that the district court was clearly erroneous in finding that NOPSI can await the results of the prudence inquiry.

Finally, SERI appeals its dismissal for lack of standing. In order to establish standing, a party must allege an actual or threatened injury, caused by another party, and likely to be cured by the relief requested. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 500–02, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). In the instant case, SERI argues that if the New Orleans City Council denies NOPSI the right to pass through the cost of Grand Gulf, NOPSI will cease payments to SERI. Such a remote possibility scarcely meets the "actual or threatened injury" requirement for standing. Even if the New Orleans City Council refused to allow NOPSI to recoup its cost, SERI would find itself in the same position as NOPSI's other creditors. Moreover, since NOPSI and SERI are both wholly owned subsidiaries of Middle South Utilities, SERI's interests are already effectively represented in this litigation. The district court accordingly did not err in dismissing SERI for lack of standing.

In view of our agreement with the district court's ripeness holding, we need not address the district court's alternative determination to abstain.

## III. CONCLUSION

Since the New Orleans City Council began its "prudence inquiry," the Supreme Court has clarified the boundary between state and federal regulators, and the New Orleans City Council has declared its intention not to cross that boundary. Any other claim that NOPSI may have against the New Orleans City Council for future actions is not yet ripe for adjudication. Because the threatened harm to SERI is remote, the district court did not err in denying SERI standing. Accordingly, the decision of the district court is

AFFIRMED.