791 F.2d 1111
 KENTUCKY WEST VIRGINIA GAS COMPANY, Equitable Gas Company, a
division of Equitable Resources, Inc., American
Gas Association (Amicus Curiae),
v.
PENNSYLVANIA PUBLIC UTILITY COMMISSION, Taliaferro, Linda
C., Commissioner, Fischl, Frank, Commissioner, Shane, Bill,
Commissioner, Federal Energy Regulatory Commission, Attorney
General (Intervenor), Barasch, David M., Consumer Advocate
(Intervenor),
Appeal of KENTUCKY WEST VIRGINIA GAS COMPANY and Equitable
Gas Company, a division of Equitable Resources, Inc.
 No. 85-5779.
 United States Court of Appeals,
Third Circuit.
 Argued April 15, 1986.
Decided June 2, 1986.
 
 William A. Mogel (argued), William R. Mapes, Jr., Randall C. Smith, Ross, Marsh & Foster, Washington, D.C., for appellants Kentucky West Virginia Gas Co., et al.; Charles E. Thomas, Jr., Carroll F. Purdy, Thomas & Thomas, Harrisburg, Pa., of counsel.
 Alphonso Arnold, Jr. (argued), Asst. Counsel, John F. Povilaitis, Deputy Chief Counsel, Daniel P. Delaney, Deputy Chief Counsel, Charles F. Hoffman, Chief Counsel, Pennsylvania Public Utility Com'n, Harrisburg, Pa., for appellee Pennsylvania Public Utility Com'n, et al.
 William H. Satterfield, General Counsel, Jerome M. Feit, Solicitor, Joanne Leveque, Atty., F.E.R.C., Washington, D.C., for appellee F.E.R.C.
 Leroy S. Zimmerman, Atty. Gen., Eugene F. Waye, Deputy Atty. Gen., Michael A. Finio (argued), Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for intervenor-appellee Atty. Gen. of Pennsylvania.
 David M. Barasch, Consumer Advocate, H. Kay Dailey (argued), Asst. Consumer Advocate, Office of Consumer Advocate, Harrisburg, Pa., for intervenor-appellee Consumer Advocate of Pennsylvania.
 David J. Muchow, Eric N. Wise, American Gas Ass'n, Arlington, Va., for amicus curiae American Gas Ass'n.
 Before SEITZ, HIGGINBOTHAM, and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The Kentucky West Virginia Gas Company ("Kentucky West") and the Equitable Gas Company ("Equitable Gas") appeal from a final order of the district court dismissing their complaint for declaratory and injunctive relief, 620 F.Supp. 1458. The district court held that Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), mandated that it abstain from reaching the merits of the companies' complaint. Subject matter jurisdiction in the district court was premised on 28 U.S.C. Secs. 1331 and 1337.[1] This court has jurisdiction by virtue of 28 U.S.C. Sec. 1291.
 
 I.
 A. The Pennsylvania Statutory Framework
 
 2
 In 1984, Pennsylvania modified the procedures by which natural gas distribution companies establish rates for the retail sale of gas to Pennsylvania consumers. See Act of May 31, 1984, Act No. 1984-74 ("Act 74"), codified at 66 Pa.Cons.Stat.Ann. Secs. 1307(f), 1317-1318 (Purdon Supp.1985). Under the Act 74 framework, "[n]atural gas distributors with gross intrastate annual operating revenues in excess of $40,000,000 may file tariffs reflecting increases or decreases in their natural gas costs ..., but no such natural gas utility shall voluntarily file more than one such tariff in a 12-month period." Id. Sec. 1307(f)(1).
 
 
 3
 Before a proposed tariff can become effective, however, the PUC must conduct an investigation to determine whether the proposed rates are "just and reasonable." See id. Secs. 1307(f)(2), 1318. And "[n]o rates for a natural gas distribution utility shall be deemed just and reasonable unless the commission finds that the utility is pursuing a least cost fuel procurement policy, consistent with the utility's obligation to provide safe, adequate and reliable service to its customers." Id. Sec. 1318(a) (emphasis added). When making this determination, the PUC must make specific findings that:
 
 
 4
 (1) The utility has fully and vigorously represented the interests of its ratepayers in proceedings before the Federal Energy Regulatory Commission.
 
 
 5
 (2) The utility has taken all prudent steps necessary to negotiate favorable gas supply contracts and to relieve the utility from terms in existing contracts with gas suppliers which are or may be adverse to the interests of the utility's ratepayers.
 
 
 6
 (3) The utility has taken all prudent steps necessary to obtain lower cost gas supplies on both short-term and long-term bases both within and outside the [state of Pennsylvania]....
 
 
 7
 (4) The utility has not withheld from the market ... any gas supplies which should have been utilized as part of a least cost fuel procurement policy.
 
 
 8
 Id. Sec. 1318(a)(1)-(4). In addition, if the utility purchases all or part of its natural gas from an affiliated interest, the PUC must make specific findings with regard to the justness and reasonableness of such purchases, including findings:
 
 
 9
 (1) That the utility has fully and vigorously attempted to obtain less costly gas supplies on both short-term and long-term bases from nonaffiliated interests.
 
 
 10
 (2) That each contract for the purchase of gas from its affiliated interest is consistent with a least cost fuel procurement policy.
 
 
 11
 (3) That neither the utility nor its affiliated interest has withheld from the market any gas supplies which should have been utilized as part of a least cost fuel procurement policy.
 
 
 12
 Id. Sec. 1318(b)(1)-(3).
 
 
 13
 Finally, for purposes of an Act 74 determination, the fact that the Federal Energy Regulatory Commission ("FERC") has approved a contract or rate for interstate purposes is "not, in and of itself, ... adequate to satisfy the utility's burden of proof that gas prices and volumes associated with such contract or rate are just and reasonable for purposes of this section." Id. Sec. 1318(d).
 
 B. The Equitable Gas Rate Proceeding
 
 14
 Plaintiff Equitable Gas, a division of Equitable Resources, Inc. ("Equitable Inc."), is a Pennsylvania corporation engaged in the production, transportation, storage, distribution, and sale of natural gas. The company serves approximately 240,000 retail customers in the greater-Pittsburgh area. It obtains approximately eighty percent of the gas necessary to serve these customers from three interstate pipeline suppliers pursuant to tariffs approved by FERC.[2] The company obtains the remainder of its gas from one of two sources: its own wells in West Virginia and Pennsylvania, or independent producers under supply agreements either approved by FERC or exempted from such regulation by 15 U.S.C. Sec. 3431.
 
 
 15
 In March 1985, Equitable Gas initiated an Act 74 proceeding before the PUC in which the company sought to modify its retail sales tariff to reflect changes in its purchased-gas costs. In particular, the company sought to recover costs passed on to it by its interstate pipeline suppliers from July 1983 through December 1984, and for anticipated increases in the cost of purchased gas for the period from September 1985 through August 1986.
 
 
 16
 In response to this request, the PUC initiated an investigation of the justness and reasonableness of the rates proposed by Equitable Gas. This investigation culminated in an order (the "PUC Order") denying the relief sought by the company. First, as to the period from July 1983 through December 1984, the PUC concluded that Equitable Gas had not pursued a least cost fuel procurement policy. Specifically, the Commission found that the company should have taken more gas from its own wells and/or independent producers instead of gas it purchased from Kentucky West, which would have resulted in cost savings of approximately $14.3 million. As a result, the PUC refused the company's request to pass on these costs to its Pennsylvania ratepayers.
 
 
 17
 Second, with respect to the future period from September 1985 through August 1986, the PUC found that Equitable Gas should reduce its purchases from the Tennessee Gas Pipeline Company (its most expensive interstate supplier) and replace those amounts with increased purchases from the Texas Eastern Transmission Corporation (its least expensive interstate supplier). The PUC projected that such action by Equitable Gas would result in cost savings of approximately $3.0 million for Pennsylvania ratepayers.
 
 
 18
 Third, the PUC rejected the company's attempt to recover projected minimum-bill liability to Kentucky West for gas not actually taken under its contract with the pipeline, resulting in further cost savings of approximately $0.7 million.
 
 
 19
 Finally, the PUC ordered Equitable Gas, "in its next Section 1307(f) filing [to] certify that it has employed separate, independent legal counsel, with access to a technical staff separate and independent from its affiliated pipeline supplier, Kentucky West ..., to represent it before [FERC]."
 
 
 20
 Equitable Gas has pursued two avenues of relief from the PUC's order. Initially, it filed a Petition for Review in the Commonwealth Court of Pennsylvania pursuant to 42 Pa. Cons. Stat. Ann. Sec. 763(a)(1) (Purdon 1981) and Pa.R.App.P. 1512(a)(1) (Purdon 1985).[3] Shortly thereafter, Kentucky West and Equitable Gas filed suit against the PUC in the district court, seeking declaratory and injunctive relief. The complaint in the latter action challenges portions of both the PUC Order and Act 74, alleging, inter alia, that they are either preempted by the Natural Gas Act ("NGA") and the Natural Gas Policy Act ("NGPA"), or that they violate the commerce and equal protection clauses.
 
 
 21
 After a hearing on the companies' motion for entry of a preliminary injunction, the district court dismissed the action. The court concluded that although Kentucky West and Equitable Gas had properly invoked its jurisdiction, abstention was required by Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Alternatively, the court concluded that abstention was independently required by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This appeal followed.
 
 II.
 
 22
 "Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue." Heritage Farms v. Solebury Township, 671 F.2d 743, 746 (3d Cir.), cert. denied, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). The doctrine, "born out of a concern for the maintenance of our federal system," id., represents an extraordinary and narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Consistent with the proposition that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244, the Supreme Court has confined the circumstances appropriate for abstention to three general categories of cases, two of which the district court relied upon here.
 
 A. Burford Abstention
 
 23
 Generally speaking, abstention under the doctrine of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is appropriate in two situations: first, "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and second, where "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River, 424 U.S. at 814, 96 S.Ct. at 1245.
 
 
 24
 In the present case, the district court found these considerations compelling in light of "the great interest the states have in regulating retail utility rates within their boundaries." Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n, 620 F.Supp. 1458 (M.D.Pa.1985), citing Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n, 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). Kentucky West and Equitable Gas challenge this conclusion. The crux of their argument is that Burford abstention is almost never appropriate where a federal plaintiff asserts a preemption claim. We review district court decisions to abstain (under Burford or Younger, see infra at 1116-1117) by an abuse of discretion standard. Heritage Farms, 671 F.2d at 748.[4]
 
 
 25
 By and large, the Courts of Appeal that have addressed this question have been sympathetic to the argument advanced by Kentucky West and Equitable Gas. See New Orleans Pub. Serv., Inc. v. City of New Orleans, 782 F.2d 1236, 1243 (5th Cir.1986); Middle S. Energy, Inc. v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404, 417 (8th Cir.1985), cert. denied, --- U.S. ---, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986); Baggett v. Dep't of Professional Regulation, 717 F.2d 521, 524 (11th Cir.1983); International Bhd. of Elec. Workers, Local Union No. 1245 v. Public Serv. Comm'n, 614 F.2d 206, 212 n. 1 (9th Cir.1980).[5] But see Aluminum Co. of America v. Utilities Comm'n, 713 F.2d 1024, 1030 (4th Cir.1983) (rejecting claim that abstention is never appropriate where preemption is at issue, and holding that, at least where detailed factfinding was required to evaluate plaintiffs' claim of preemption, district court did not abuse its discretion in abstaining under Burford ), cert. denied, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984).
 
 
 26
 The rationale underlying these decisions is simple and straightforward: "[t]he purpose of Burford abstention is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts," International Bhd. of Elec. Workers, 614 F.2d at 212 n. 1, whereas "supremacy clause claims are 'essentially one[s] of federal policy,' so that 'the federal courts are particularly appropriate bodies for the application of preemption principles.' " Kennecott Corp. v. Smith, 637 F.2d 181, 185 (3d Cir.1980), quoting Hagans v. Levine, 415 U.S. 528, 550, 94 S.Ct. 1372, 1386, 39 L.Ed.2d 577 (1974); see also South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm'n, 744 F.2d 1107, 1123 (5th Cir.1984) (holding that questions of federal preemption are "in no way dependent on local factors or local expertise for their resolution"). In short, then, where "Congress has created a statutory scheme ... which arguably preempts the local regulation complained of, a fundamental element of Burford abstention is thrown into doubt, for we must question whether the case indeed involves an essentially local issue." New Orleans Pub. Serv., Inc., 782 F.2d at 1243.
 
 
 27
 Viewed in this light, we believe that the district court's reliance upon Burford was misplaced. Kentucky West and Equitable Gas have raised substantial questions concerning whether the NGA or NGPA directly or indirectly preempt portions of Act 74 and the PUC Order. While we recognize that a decision on the merits of these claims may indeed disrupt Pennsylvania's scheme for regulating retail natural gas rates, "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy." Zablocki v. Redhail, 434 U.S. 374, 379-80 n. 5, 98 S.Ct. 673, 677-78 n. 5, 54 L.Ed.2d 618 (1978).[6]
 
 B. Younger Abstention
 
 28
 Relying upon Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the district court determined, sua sponte, that abstention was independently required by the doctrine of "Our Federalism," first enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Kentucky West and Equitable Gas, on the other hand, assert that the district court's decision in this regard constitutes an unwarranted extension of the Younger doctrine. The crux of their argument is that the court fell prey to the same error committed by the district court in New Jersey Educ. Ass'n v. Burke, 579 F.2d 764 (3d Cir.), cert. denied, 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978)--that is, the court "assumed that the mere existence of a pending state proceeding in which the federal questions could be adjudicated automatically invokes Younger."
 
 
 29
 In Middlesex County, the Supreme Court set forth a three-pronged test for determining whether a federal court should abstain from interfering with pending state judicial proceedings. "First, there must be an ongoing state judicial proceeding. Second, the proceeding must implicate important state interests. Third, there must be an opportunity in the state proceeding to raise the federal constitutional challenge." Coruzzi v. State of New Jersey, 705 F.2d 688, 690 (3d Cir.1983).
 
 
 30
 In the present case, the district court concluded that Pennsylvania has an important state interest in regulating retail natural gas rates. What the district court failed to appreciate, however, is the equally important federal interest in regulating interstate natural gas rates, authority over which Congress has vested exclusively in FERC. The importance of the latter interest has, moreover, led several courts to conclude that "[t]he legitimate state interest contemplated by Younger, see Middlesex County Ethics Committee v. Garden State Bar Association, ... does not exist when the state action has been preempted or foreclosed by the Constitution." Middle South, 772 F.2d at 417; see also Champion Int'l Corp. v. Brown, 731 F.2d 1406, 1409 (9th Cir.1984) ("Montana has no cognizable state interest in enforcing those age discrimination laws that are preempted by federal law."); Baggett, 717 F.2d at 524 (holding that abstention is inappropriate when the "assertion of preemption went to the jurisdiction and power of the state agency to proceed at all"). In short, these courts have concluded that the notion of "comity" embodied by the Younger doctrine is "not strained when a federal court cuts off state proceedings that entrench upon the federal domain." Middle South, 772 F.2d at 417.
 
 
 31
 It would, admittedly, be an overstatement to suggest that Younger abstention is never appropriate when the question presented is one of preemption. That is not, however, the only factor that counsels against the application of Younger abstention in the present case; rather, its procedural posture also dictates that abstention is inappropriate. Cf. Johnson v. Kelly, 583 F.2d 1242, 1251-52 (3d Cir.1978) (holding that where the pending state proceeding is privately initiated, the state's interest in the outcome of that proceeding is "not appreciably greater that its interest in any private lawsuit in which state legislation may be subjected to a challenge on federal constitutional grounds"); accord Harris v. Pernsley, 755 F.2d 338, 344 (3d Cir.), reh'g denied in banc, 758 F.2d 83, cert. denied, --- U.S. ---, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985); Williams v. Red Bank Bd. of Educ., 662 F.2d 1008, 1019-20 (3d Cir.1981); New Jersey Educ. Ass'n, 579 F.2d at 771.[7]
 
 
 32
 "In the typical Younger case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings." Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 30 (1984). In this case, on the other hand, the federal plaintiffs--Kentucky West and Equitable Gas--are also the state plaintiffs. Moreover, they are not seeking to enjoin any state judicial proceeding; instead, they simply desire to litigate what is admittedly a federal question in federal court, having agreed to dismiss their pending state appeal if the district court assumes jurisdiction over the merits of their complaint. Cf. New Jersey Educ. Ass'n, 579 F.2d at 768 (observing that "the relief sought includes a declaration of rights and an injunction against state administrative agencies, rather than an injunction against state court action, a procedure which the plaintiff offered to withdraw").
 
 
 33
 Under the circumstances, then, we believe that the balance of state and federal interests tips decidedly away from abstention under Younger. New Jersey Educ. Ass'n, 579 F.2d at 771-72. As a result, the district court abused its discretion when it dismissed the companies' complaint on this basis. To deny Kentucky West and Equitable Gas access to a federal forum simply because of their pending state appeal would be at odds with a fundamental premise of our federal judicial system: that is, "that where Congress has granted concurrent jurisdiction, a plaintiff is free to bring suit in both the state and federal forums for the same cause of action." Id. at 769.
 
 III.
 
 34
 The Pennsylvania Consumer Advocate asserts that, independent of the applicability of Burford or Younger abstention, the district court's decision can be affirmed on the basis of the doctrine set forth in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Similarly, the PUC argues that even if none of the abstention doctrines apply, the district court was still entitled to dismiss the case under the "judicial economy" doctrine first enunciated in Colorado River, and later clarified in Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We find these arguments untenable, however.
 
 
 35
 First, as to the Consumer Advocate's argument, the Supreme Court has stated that "federal courts need not abstain on Pullman grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' the federal constitutional question." Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Although the Consumer Advocate asserts that Act 74 may be amenable to a construction that would obviate the need to decide the constitutional issues presented by this case, he has not pointed to any ambiguity in the statutory scheme, see Georgevich v. Strauss, 772 F.2d 1078, 1091 (3d Cir.1985) (in banc ), cert. denied, --- U.S. ---, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), nor has he pointed to any other "potentially preclusive state law issue," Harris v. Pernsley, 755 F.2d at 344. Quite to the contrary, the statute is, in our opinion, not only clear on its face, it is also consistent with prior Pennsylvania case law on this topic. See Pike County Light & Power Co. v. Pennsylvania Pub. Util. Comm'n, 77 Pa.Commw. 268, 465 A.2d 735 (1983) (holding that PUC order disallowing part of an electric utility's purchased power expense upon a finding that utility's reliance upon parent company as a source of power despite cheaper available sources of power constituted an abuse of discretion not preempted by the Federal Power Act). Under such circumstances, abstention from federal jurisdiction under the Pullman doctrine is neither required nor permitted.
 
 
 36
 The PUC did not assert the Colorado River doctrine in the district court, nor did that court rely upon it. But even assuming that we need address this issue, there has been no showing of the requisite "exceptional circumstances" to justify the district court's decision to dismiss the companies' complaint. For example, the PUC has not pointed to any Congressional legislation like the McCarran Amendment in Colorado River that evinces "a tempering of the policy of enforcing the plaintiff's choice of a federal forum in favor of a policy of avoiding duplicative or inconvenient litigation." Harris v. Pernsley, 775 F.2d at 345.
 
 
 37
 In addition, federal, rather than state, substantive law will govern the present case, a factor that the Supreme Court has stated "must always be a major consideration weighing against [the] surrender [of federal jurisdiction]." Moses H. Cone, 460 U.S. at 26, 103 S.Ct. at 942 (footnote omitted). In short, then, we can perceive no way in which the balancing of factors mandated by Moses H. Cone, see id. at 15-16, 23-26, 103 S.Ct. at 936-37, 941-42, provides the " 'exceptional' circumstances, the 'clearest of justifications' [required] under Colorado River to justify the surrender of [federal] jurisdiction." Moses H. Cone, 460 U.S. at 25-26, 103 S.Ct. at 942 (emphasis in original).
 
 IV.
 
 38
 Kentucky West and Equitable Gas also argue that we should address the merits of their complaint and invalidate Act 74 and the PUC Order. Alternatively, they argue that we should issue a preliminary injunction against the PUC or remand with instructions ordering the district court to do so.
 
 
 39
 Given the legal and factual complexity of this case, we will decline the companies' express invitation to reach the merits of their complaint or enter the injunction they seek. While several of the questions presented may be purely legal in character, we are not fully convinced that all of the issues posed by their complaint can be decided without factfinding by the district court. In addition, we note that FERC, a nominal defendant in the present case, chose not to address the merits of the companies' complaint, because "[t]o do so seems premature, when the court has not decided whether it will consider the case." Since the final determination of the present case hinges in large part on questions involving the extent of FERC's jurisdiction under the NGA and NGPA, questions peculiarly within the Commission's competence, we believe that the court should reach the merits only after FERC has had an opportunity to respond.
 
 
 40
 As a result, we will remand this cause to the district court for a decision on the merits; the district court should also expeditiously resolve the companies motion for a preliminary injunction. At that time, the parties to this appeal will be able to supplement the record if they so desire, and to submit any additional briefing requested by that court.
 
 V.
 
 41
 Accordingly, the judgment of the district court dismissing the complaint will be reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Pennsylvania Public Utility Commission ("PUC") argued below that the Johnson Act, 28 U.S.C. Sec. 1342, prohibited the district court from exercising jurisdiction over plaintiffs' complaint. The district court rejected this argument, however, and the PUC has not pursued it on appeal
 
 
 [2]
 One of these suppliers is plaintiff Kentucky West, a wholly-owned subsidiary of Equitable Inc., which sells approximately seventy percent of its gas to Equitable Gas
 
 
 [3]
 Although the status of this appeal is somewhat unclear, Kentucky West and Equitable Gas have indicated that they will not pursue that action if the district court addresses the merits of their complaint
 
 
 [4]
 In addition, "[b]ecause a dismissal (without retention of jurisdiction) on abstention grounds is in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6), for purposes of this appeal we must accept as true the allegations contained in plaintiffs' complaint," Heritage Farms, 671 F.2d at 745
 
 
 [5]
 Although the judgment itself was later vacated by the Supreme Court, this court expressed a similar sentiment in a case involving the preemptive scope of federal labor and pension laws. See Hotel & Restaurant Employees & Bartenders Int'l Union Local 54 v. Danziger, 709 F.2d 815, 832 (3d Cir.1983) ("No [Burford] argument can be entertained based on a disruption of a state administrative scheme in a case in which the Court is asked to decide whether the very existence of that scheme violates a paramount federal statute."), vacated on other grounds, 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984)
 
 
 [6]
 We realize that this result conflicts in some respects with that reached by the Fourth Circuit in the Aluminum Co. of America case, a case relied upon by the district court. That decision is, however, at odds with the decisions of the Fifth, Eighth, Ninth, and Eleventh Circuits. In addition, the scope of the Fourth Circuit's decision (and thus the degree of conflict with our holding) is itself unclear. For example, in the Aluminum Co. of America case, the court held that Burford "abstention is inappropriate where the federal government has preempted the field, or where there is a direct, facial conflict between state and federal statutes." 713 F.2d at 1030 (citations omitted). Thus, given the companies' assertion in this case that 66 Pa.Cons.Stat. Sec. 1318(d) facially conflicts with the NGA and the NGPA, the present decision may not be inconsistent with that of the Fourth Circuit
 
 
 [7]
 Judge Becker believes that Harris v. Pernsley is dispositive on the Younger abstention issue, and would not reach the other grounds discussed in Part II.B