856 F.2d 529
 57 USLW 2178
 Robert A. FELMEISTER, Hanan M. Isaacs and Felmeister &
Isaacs, a partnership, Appellants,
v.
OFFICE OF ATTORNEY ETHICS, A DIVISION OF THE NEW JERSEY
ADMINISTRATIVE OFFICE OF THE COURTS; Robert N. Wilentz;
Robert L. Clifford; Alan B. Handler; Daniel J. O'Hern;
Stewart G. Pollock; Marie A. Garibaldi; Gary S. Stein, in
their capacity as Justices of the Supreme Court of New
Jersey; David E. Johnson, Jr., in his capacity as Director
of the Office of Attorney Ethics; Robert D. Lipscher, in
his capacity as Director of the Administrative Office of the Courts.
 No. 87-5524.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 12, 1988.
Decided Aug. 31, 1988.
 
 David B. Rubin (argued), Rubin, Rubin & Malgran, Piscataway, N.J., for appellants.
 W. Cary Edwards, Atty. Gen. of N.J., Andrea M. Silkowitz, Asst. Atty. Gen., Susan L. Reisner, Deputy Atty. Gen. (argued), Newark, N.J., for appellees.
 Before HIGGINBOTHAM and BECKER, Circuit Judges, and SHAPIRO, District Judge.*
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an appeal from the district court's dismissal on grounds of ripeness and Burford abstention of plaintiffs' complaint seeking a declaration that the New Jersey Supreme Court's revised attorney advertising regulations violate the first and fourteenth amendments to the constitution. The challenged disciplinary rule provides, inter alia, that "[a]ll advertisements shall be predominantly informational"; that "[n]o drawings, animations, dramatizations, music, or lyrics shall be used in connection with televised advertising"; and that "[n]o advertisement shall rely in any way on techniques to obtain attention that depend upon absurdity and that demonstrate a clear and intentional lack of relevance to the selection of counsel." R.P.C. 7.2(a).
 
 
 2
 Plaintiffs are attorneys Robert A. Felmeister, Hanan M. Isaacs and their law partnership, Felmeister & Isaacs. They have alleged in their (amended) complaint that the rule: (1) violates the protections afforded commercial speech under the first and fourteenth amendments; (2) imposes an unconstitutionally vague standard to determine whether advertisements are sanctioned under the rule in violation of the Due Process Clause of the fourteenth amendment; and (3) creates an unlawful prior restraint by requiring prepublication review of advertisements by the Supreme Court of New Jersey Committee on Attorney Advertising.
 
 
 3
 We conclude that the district court abused its discretion in abstaining under Burford v. Sun Oil Co., 319 U.S. 315, 318-26, 63 S.Ct. 1098, 1099-1103, 87 L.Ed. 1424 (1943). We do not believe that the regulation of attorney advertising concerns an area that is particularly complex and technical, nor do we believe that it implicates peculiarly local concerns. Hence, we cannot agree that the exercise of federal jurisdiction here would constitute inappropriate interference in the shaping of important state policies.
 
 
 4
 We nevertheless decline to reach the merits because we agree with the district court's decision to dismiss the complaint for lack of ripeness. On the basis of the mere allegations in the complaint and accompanying affidavit, it is impossible to determine whether plaintiffs' proposed advertisements are likely to run afoul of the revised rule or whether publication of the ads is likely to subject plaintiffs to disciplinary action. Moreover, plaintiffs need not risk disciplinary action in order to learn whether their advertisements comply with the rule. New Jersey has provided an expeditious means of testing the reach of the rule through an advisory opinion process. Plaintiffs, however, have not submitted their advertisements to the advisory committee and hence have not availed themselves of a relatively simple way of determining whether their ads run afoul of the rule. Recent Supreme Court jurisprudence suggests that mandatory prescreening of commercial advertisements may be constitutionally sound, see infra page 537; we simply rely on the availability of the advisory process in declining to grant premature judicial review. Without a demonstration that plaintiffs are likely to risk disciplinary action, they have not presented the court with a justiciable case or controversy.
 
 I. PROCEDURAL HISTORY
 
 5
 On January 16, 1984, the Supreme Court of New Jersey promulgated DR2-102(A) (recodified as RPC 7.2(a)), which provided that:
 
 
 6
 Subject to the requirements of RPC 7.1, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, radio or television, or through mailed written communications. All advertisements shall be presented in a dignified manner without the use of drawings, animations, dramatizations, music or lyrics.
 
 
 7
 In their original complaint filed February 9, 1984, pursuant to 42 U.S.C. Sec. 1983, plaintiffs sought declaratory and injunctive relief against the Office of Attorney Ethics, a division of the New Jersey Administrative Office of the Courts, challenging the "dignified manner" standard and the limitation on the use of drawings, animations, etc., as violative of the first and fourteenth amendments. The defendant responded by moving for dismissal on grounds of abstention and failure to name a proper party defendant.
 
 
 8
 In a bench opinion delivered February 27, 1984, the district court abstained under Burford v. Sun Oil Co., 319 U.S. 315, 318-26, 63 S.Ct. 1098, 1099-1103, 87 L.Ed. 1424 (1943), on the ground that attorney advertising was an "emerging, uncertain area" in which "[t]here [wa]s indeed a substantial state interest in regulation by a state supreme court." App. at 17a. Additionally, the court noted that Felmeister and Isaacs could raise the constitutional issues presented in their federal suit before the New Jersey Supreme Court by way of a direct petition invoking the Supreme Court's original jurisdiction to challenge the rule. Relying on American Trial Lawyers v. New Jersey Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973), the district court retained jurisdiction pending the state court proceedings.
 
 
 9
 Plaintiffs thereupon directly petitioned the Supreme Court of New Jersey, which remanded the matter to a state trial court to develop a factual record.[1] The state trial court conducted an adversary proceeding and recommended that the "dignity" standard be retained, but that the prohibition against the use of drawings, animations, dramatizations, music or lyrics be eliminated from the rule.
 
 
 10
 The parties briefed and argued the merits of the trial court's recommendations to the New Jersey Supreme Court. For public policy and federal constitutional reasons, the Supreme Court significantly revised the attorney advertising rule. Petition of Felmeister & Isaacs, 104 N.J. 515, 518 A.2d 188, 189 (1986). The new rule, New Jersey Rule of Professional Conduct 7.2, provides in pertinent part:
 
 
 11
 Subject to the requirements of RPC 7.1. a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, radio or television, or through mailed written communication. All advertisements shall be predominantly informational. No drawings, animations, dramatizations, music, or lyrics shall be used in connection with televised advertising. No advertisement shall rely in any way on techniques to obtain attention that depend upon absurdity and that demonstrate a clear and intentional lack of relevance to the selection of counsel; included in this category are all advertisements that contain any extreme portrayal of counsel exhibiting characteristics clearly unrelated to legal competence.
 
 Id.[2]
 
 12
 The Supreme Court also created a new administrative agency, the Supreme Court of New Jersey Committee on Attorney Advertising (the "Committee"), to implement the rule. Id. at 205-07. The Committee's delegated authority included the power, inter alia, (1) to promulgate rules and regulations and monitor compliance therewith; (2) to establish guidelines for application of the new rule's "predominantly informational" and "extreme portrayal" standards; (3) to render advisory opinions in advance of publication; (4) to review at its discretion, prior to publication, any attorney advertisements prepared with the assistance of advertising professionals; and (5) to report annually (beginning January 1, 1988), after public hearings, "on the desirability of retaining, revising or repealing the new rule, or adopting any other proposed rule." Id. at 205-07.
 
 
 13
 On January 5, 1987, following the Supreme Court's decision, plaintiffs filed an amended complaint in the district court. In this complaint they joined as defendants the individual justices of the Supreme Court and the directors of the Office of Attorney Ethics and the Administrative Office of the Courts. App. at 30a-31a. Plaintiffs challenged the revised rule, claiming that it violated their first amendment rights. App. at 31a. They attacked the new rule's "predominantly informational" standard as unconstitutionally vague and the Committee's prepublication review function as an unlawful prior restraint. App. at 31a-32a. The defendants countered with a motion to dismiss on the grounds, inter alia, of abstention and lack of ripeness for adjudication.
 
 
 14
 In the district court's view it was unnecessary to reach the merits of plaintiffs' application for a preliminary injunction because the amended complaint was dismissible on the ground of Burford abstention. Relying on the state Supreme Court's characterization of its decision as "tentative and subject to change based on future experience," 518 A.2d at 189, and the Supreme Court's creation of the Committee to administer the rule, the district court concluded that the exercise of federal jurisdiction would be disruptive of the state's efforts to establish a coherent policy on matters of public concern. App. at 67a.
 
 
 15
 As an alternative ground for dismissal, the district court concluded that plaintiffs' case was not ripe for adjudication. In reaching this conclusion, the district court relied on two factors. First, even assuming that plaintiffs' complaint presented a live case or controversy, the court held that their "claim [wa]s clearly not ripe for adjudication as long as the Committee ha[d] yet to issue its report." App. at 71a. Second, the court noted that Felmeister and Isaacs "ha[d] not demonstrated how they [we]re suffering any hardship as a result of the new Rule" since the threatened injury complained of by plaintiffs was speculative and remote.[3] App. at 72a. The district court thus dismissed plaintiffs' amended complaint and this appeal followed.
 
 
 16
 On appeal, Felmeister and Isaacs urge us to vacate the district court's dismissal order and remand the matter to the district court with instructions to enjoin enforcement of the revised rule. Defendants, however, argue for affirmance either on the grounds relied upon by the district court or on alternative grounds advanced by them before the district court but not addressed in that court's decision, i.e., lack of standing, lack of subject matter jurisdiction, lack of a case or controversy, and res judicata. We find it unnecessary to address these alternative grounds for affirmance because we conclude, for the reasons set forth below, that the matter is not ripe for adjudication. We must first, however, address the primary ground for the district court's order--Burford abstention.
 
 II. BURFORD ABSTENTION
 
 17
 "Abstention from the exercise of federal jurisdiction is ... 'the exception, not the rule.' " United Services Automobile Ass'n v. Muir, 792 F.2d 356, 360 (3d Cir.1986) (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)), cert. denied, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). The genesis of the Burford abstention doctrine lies in the case bearing that name, which involved a specialized aspect of Texas' complex regulatory system devised to conserve the state's oil and gas resources through a well-organized local administrative and judicial decision-making hierarchy. Burford v. Sun Oil Co., 319 U.S. 315, 318-26, 63 S.Ct. 1098, 1099-1103, 87 L.Ed. 1424 (1943). As subsequent Supreme Court precedent illustrates, Burford abstention is appropriate where a case presents a difficult and technical question of state law involving important state policies such that the exercise of federal jurisdiction would be disruptive of a state's efforts "to establish a coherent policy with respect to a matter of substantial public concern." Colorado River, 424 U.S. at 814, 96 S.Ct. at 1245; see also County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189-90, 79 S.Ct. 1060, 1063-64, 3 L.Ed.2d 1163 (1959); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). However, "[no] attempt at defining the class of cases in which this type of abstention is proper is very precise." C. Wright, Law of Federal Courts Sec. 52, at 308 (4th ed. 1983).
 
 
 18
 A review of our own recent Burford abstention jurisprudence illustrates the limited scope of the doctrine's application. For example, in Muir, 792 F.2d at 364, we held that Burford abstention should not have been applied to an insurer's challenge to the state agency's revocation of its license even though the McCarran-Ferguson Act, 15 U.S.C. Sec. 1012 (1982), granted the states exclusive control over the regulation of insurance. Abstention was inappropriate because the issue presented--whether a state law prohibiting ownership of banks by insurance companies was preempted by federal law--did not involve interpretation of any other state statutes, the relevant facts were simple and undisputed, no complicated regulatory scheme was involved, no peculiarly local conditions existed, and no special expertise was required to interpret the statute. 792 F.2d at 365.
 
 
 19
 Again, in Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Commission, 791 F.2d 1111, 1115-16 (3d Cir.1986), we held that district court abstention under Burford was inappropriate where the plaintiffs sought injunctive and declaratory relief from a state utility commission's order on the ground that federal law preempted either the state's law or the commission's order or both. We explained that, although a decision on the merits might be disruptive of the state's efforts to regulate utility rates, the abstention doctrine did not require a withdrawal of federal jurisdiction "merely because resolution of a federal question may result in the overturning of state policy." Id. at 1116 (quoting Zablocki v. Redhail, 434 U.S. 374, 379-80 n. 5, 98 S.Ct. 673, 677-78 n. 5, 54 L.Ed.2d 618 (1978)).
 
 
 20
 Finally, in Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 747-48 (3d Cir.), cert. denied, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), we also concluded the application of Burford abstention was inapposite. There, plaintiffs had alleged a civil rights conspiracy among township officials aimed at destroying their rights to engage in a legitimate land development business through defamation, corruption and fraud. We reached this conclusion even though the case implicated local land use policies and issues.
 
 
 21
 From this survey of our own decisions, we note that even in such specialized and technical areas of particularly local concern as insurance, utility rates and land use, abstention under Burford will not necessarily be appropriate. In the instant case, the regulation by New Jersey of attorney advertising does not share the usual features of regulatory schemes to which Burford abstention traditionally applies.
 
 
 22
 Although we have serious doubts as to whether Burford abstention ever would be appropriate where substantial first amendment issues are raised,[4] we need not address this question because, in our view, abstention is not implicated by the regulatory scheme at issue in this case.[5] The work of the Committee on Attorney Advertising, with review by the Supreme Court of New Jersey, does not present the sort of complex, technical, regulatory scheme to which the Burford abstention doctrine usually is applied. Concededly, a state obviously has a substantial interest in regulating attorney advertising, just as it has in the general regulation of the conduct of the bar. However, the regulation of attorney advertising, unlike the regulation of oil and gas conservation involved in Burford, does not involve peculiarly local conditions, is not beyond the understanding of a federal court, and does not require special or technical expertise or interpretation of numerous other state regulations. See Muir, 792 F.2d at 364-65.[6] In fact, the Committee is composed of both lay persons and attorneys and there is nothing in the Supreme Court of New Jersey's decision creating the Committee to indicate that the Committee's work should be guided by considerations other than those of reasonableness, common sense and sound judgment. See Petition of Felmeister & Isaacs, 104 N.J. 515, 518 A.2d 188, 189, 205-07 (1986).[7]
 
 
 23
 We conclude that the exercise of federal jurisdiction to review New Jersey's revised attorney advertising rule would not be disruptive of the state's effort to establish a coherent policy concerning a complicated local matter, see Muir, 792 F.2d at 364, and hence that the district court abused its discretion in dismissing plaintiffs' amended complaint on the grounds of Burford abstention.
 
 III. RIPENESS
 
 24
 The ripeness doctrine, like other justiciability doctrines, derives ultimately from the requirement in Article III of the United States Constitution that federal courts are only empowered to decide cases and controversies. "Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint." Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 940 n. 12 (D.C. Cir.1986). This court has recognized that considerations of ripeness are sufficiently important that we are required to raise the issue sua sponte even though the parties do not. See Suburban Trails, Inc. v. New Jersey Trans. Corp., 800 F.2d 361, 365 (3d Cir.1986).[8]
 
 
 25
 The ripeness doctrine addresses questions of timing, i.e., "when in time is it appropriate for a court to take up the asserted claim." Action Alliance, 789 F.2d at 940 (emphasis in original). The doctrine seeks to avoid entangling courts in the hazards of premature adjudication. Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). With regard to administrative agency actions, considerations of ripeness reflect the need "to protect th[os]e agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Id. at 148-49, 87 S.Ct. at 1515 (emphasis supplied). See also American Booksellers Ass'n, Inc. v. Hudnut, 771 F.2d 323, 327 (7th Cir.1985) (case is not ripe if issue is still poorly formed, app ication of statute uncertain, or statute not yet effective and dispute cannot be resolved without reference to administration of the statute), aff'd mem, 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). As we explained in Suburban Trails, 800 F.2d at 365, judicial review is premature when an agency has yet to complete its work by arriving at a definite decision.
 
 
 26
 According to the Supreme Court, questions of ripeness implicate two competing concerns: the fitness of issues for judicial review and the hardship to the parties if judicial consideration is withheld. Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515. We take these matters up in turn.
 
 A. Fitness
 
 27
 Whether a question is fit for judicial review depends upon factors such as
 
 
 28
 whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it.
 
 
 29
 Action Alliance, 789 F.2d at 940. We look first to the finality of the agency action.
 
 
 30
 Even taking a flexible and pragmatic view of the finality of agency action, see Suburban Trails, 800 F.2d at 366, finality is absent in this case. Plaintiffs have not, as yet, even undertaken to gain approval of the Committee for the five advertisements that they submitted as exhibits to Isaacs' affidavit. App. at 40a-44a. Moreover, there is nothing in the record to indicate that any of their proposed advertisements would meet with the Committee's disapproval. Plaintiffs assert that they have withdrawn certain advertisements from publication in response to the new rule. See supra note 3. However, they have not explained precisely how or why these ads would run afoul of the revised rule; more importantly, they have not given the Committee the opportunity to determine whether the ads comply with the rule.
 
 
 31
 In its present posture, plaintiffs' constitutional challenge to the revised attorney advertising rule resembles that of the plaintiffs in Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In Williamson, the Supreme Court dismissed plaintiffs' constitutional challenge to the action of local zoning authorities as premature because plaintiffs had never applied for possibly available variances and hence had never obtained a final decision from the local agency. Id. at 200, 105 S.Ct. at 3123. Williamson involved constitutional challenges under the fifth amendment Just Compensation Clause and the fourteenth amendment Due Process Clause, whereas plaintiffs in the instant case mount a first amendment attack on the revised advertising rule. We do not, however, view this difference as dispositive for purposes of analysis of the ripeness question.
 
 
 32
 Although the first amendment affords protection to commercial speech, commercial speech traditionally is more susceptible to government regulation than other forms of protected speech because it is considered more objectively verifiable, Virginia St. Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 771-72 n. 24, 96 S.Ct. 1817, 1830-31 n. 24, 48 L.Ed.2d 346 (1976), because it is more durable than other forms of speech, id., and because it may be of less constitutional moment, Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 562-63 & n. 5, 100 S.Ct. 2343, 2349-50 & n. 5, 65 L.Ed.2d 341 (1980). See also Posadas de Puerto Rico Assocs. v. Tourism Co., 478 U.S. 328, 106 S.Ct. 2968, 2982, 92 L.Ed.2d 266 (1986). In this regard, we note that the Supreme Court has repeatedly suggested that in the area of commercial speech, prescreening or prepublication review of advertisements may be constitutionally sound. See, e.g., Shapero v. Kentucky Bar Ass'n, --- U.S. ----, 108 S.Ct. 1916, 1923, 100 L.Ed.2d 475 (1988) (although total ban on direct mail solicitation is impermissible, state can regulate abuses and minimize mistakes through requirement that attorneys file proposed solicitation letters with state agency for case-by-case review); Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 668, 105 S.Ct. 2265, 2290, 85 L.Ed.2d 652 (1985) (Brennan, J., concurring in part and dissenting in part) (a basic justification for allowing punishment for violations of imprecise commercial regulations is that business person can clarify meaning of arguably vague regulations by consulting with governmental administrators); Central Hudson, 447 U.S. at 571 n. 13, 100 S.Ct. at 2354 n. 3 (commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply, and system of previewing advertising campaigns may be acceptable given adequate procedural safeguards).[9] Therefore, the finality requirement of the ripeness analysis applies in force to plaintiffs' constitutional challenges to the attorney advertising rule.
 
 
 33
 In sum, until it is shown that plaintiffs wish to engage in an activity that would be prohibited under the revised attorney advertising rule, their challenge lacks the level of factual specificity necessary to make the matter ripe for adjudication. It may be that plaintiffs' proposed advertisements will meet with the Committee's approval, and if that were the outcome of the agency action, there would indeed be no case or controversy to adjudicate because the concrete effects of the agency action would be favorable to plaintiffs. See Abbott Laboratories, 387 U.S. at 148-49, 87 S.Ct. at 1515-16.[10]
 
 
 34
 Turning to the second and third factors in determining whether the case is fit for judicial review, see supra pages 536-37, we observe that the case presented by plaintiffs not only requires additional factual development, but the Committee has not been given the opportunity to clarify its position in this case. Cf. Posadas de Puerto Rico Assocs. v. Tourism Co., 478 U.S. 328, 106 S.Ct. 2968, 2980, 92 L.Ed.2d 266 (Puerto Rico's statute and regulations restricting advertising of casino gambling are not unconstitutionally vague given narrowing construction adopted by local courts). The considerations highlighted in our discussion of the finality factor apply equally to these other factors. Because plaintiffs have failed to present the Committee with an opportunity to review their advertisements, there is a dearth of factual material in the record referable to these particular plaintiffs and their particular ads. Furthermore, without administrative action by the Committee regarding the specific advertisements proposed by plaintiffs, the Committee's position is not only unclear, it is purely hypothetical. We believe, in the first instance, that the Committee should be given the opportunity to clarify the rule it is charged with administering.
 
 
 35
 Therefore, analysis of the Abbott Laboratories "fitness" factor militates in favor of non-ripeness.
 
 B. Hardship
 
 36
 Turning to the second prong of the ripeness test enunciated in Abbott Labs, it is settled that in order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant. Action Alliance, 789 F.2d at 940. However, we find the record devoid of evidence indicating that plaintiffs would suffer immediate and significant hardship should judicial review of their case be deferred.
 
 
 37
 We note in this regard that in its first annual report to the Supreme Court of New Jersey, filed December 31, 1987,[11] the Committee noted that, with a few exceptions, it was able to respond promptly to inquiries. Under R. 1:19A-3(b), the Committee is required to act on an inquiry at its next meeting following receipt of the request. See First Annual Report for Calendar Year 1987-1988 of the Supreme Court of New Jersey Committee on Attorney Advertising at 7 [hereinafter Committee Report ]. In its first year of operation, the Committee held eight meetings at which it considered 27 formal inquiries and disposed of 23, primarily by letter opinions, with three resolved by formal opinion published in the New Jersey Law Journal. Id. at 2-3. Therefore, it appears that an inquiry addressed to the Committee by plaintiffs seeking an advisory opinion as to the acceptability of their proposed advertisements should meet with a prompt response.
 
 
 38
 Given the safeguards built into the Committee's system, in this context of commercial speech we do not believe plaintiffs are denied public access to the federal courts by our requirement that they first engage in the administrative decision-making process before seeking judicial review. Even though plaintiffs challenge the "predominantly informational" standard of the revised rule as unconstitutionally vague, Appellants' Brief at 16-17, a claim on which we intimate no view at this time, under the present regulatory structure plaintiffs are in no danger of being disciplined without having an opportunity to determine in advance whether their proposed advertisements are lawful. See Petition of Felmeister and Isaacs, 104 N.J. 515, 518 A.2d 188, 206 (1986) (Committee has authority to render advisory opinions at request of attorneys in advance of publication).[12]
 
 
 39
 In sum, we find that the plaintiffs' hardship is neither immediate nor significant. To the extent that plaintiffs felt compelled to withdraw certain ads because of the revised rule, see supra note 3, we do not believe that such harm to commercial interests is sufficiently strong to outweigh the unfitness for review we have already described, particularly in light of the Committee's demonstrated ability to provide advisory opinions in an expeditious manner. In other words, applying the Abbott Laboratories fitness/hardship balance, the scales are clearly tipped in support of the non-ripeness determination.[13]
 
 
 40
 The district court's order dismissing this case for lack of ripeness will be affirmed.
 
 
 
 *
 Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court envisioned an expeditious Supreme Court resolution of plaintiffs' petition based upon defense counsel's assertion that prompt filing would allow the New Jersey Supreme Court to hear the petition by the end of its then current term in May 1984. See App. at 19a. In fact, the Supreme Court did not hear oral argument on the trial court's recommendations until October 22, 1984, and did not render its decision until December 10, 1986, almost three years after the district court initially abstained. See Petition of Felmeister and Isaacs, 104 N.J. 515, 518 A.2d 188 (1986). The protracted course of the proceedings in this case does not, however, relieve us from the constraints of the ripeness doctrine, which is a species of the jurisprudence of justiciability, the ultimate constraint upon our jurisdiction
 
 
 [2]
 It is this revised rule that is the subject of the instant appeal
 
 
 [3]
 In this regard, the district court observed that "the only 'evidence' of injury presented by plaintiffs [we]re assertions that various members of the Committee w[ould] not be prone to approve plaintiffs' advertisements, as they [we]re individuals who plaintiffs ha[d] encountered in a previous challenge to attorney advertising rules." App. at 72a
 We note, however, that Isaacs, in his affidavit in support of plaintiffs' amended complaint, stated that he had stopped publication of newspaper advertising "as a direct and proximate result of the [Supreme Court's] December 10 opinion" because, in his opinion, the type of advertisements permitted under the revised rule were "unlikely ... to draw the public's attention, or to appeal to the public's need for information in a way that [wa]s likely to result in a client's contacting our firm." See Affidavit of Hanan M. Isaacs, p 6. App. at 37a. Although not stated with the utmost clarity, we nevertheless believe that the only logical inference to be drawn from this statement is that Isaacs withdrew his advertising for fear of violating the revised rule. We suspect that Isaacs' reluctance to state his belief forthrightly may have stemmed from a desire to preserve his position before the New Jersey Supreme Court, should he be called upon to defend his ads.
 
 
 [4]
 Our research has not disclosed any precedent for applying Burford abstention to a claim that arose under the first amendment nor was defendants' counsel able to provide us with case citations when we raised this question at oral argument
 
 
 [5]
 Our scope of review of a district court's decision to abstain under Burford is abuse of discretion. See Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d at 1115
 
 
 [6]
 For example, the two key standards in the revised rule--"predominantly informational" and "extreme portrayal"--do not appear to require technical or special expertise to apply
 
 
 [7]
 To the extent that there are strong local interests implicated by this case, we note that they would appear to be outweighed by the federal interest in insuring compliance with the Constitution. See Colorado River, 424 U.S. at 814 n. 21, 96 S.Ct. at 1245 n. 21 ("the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention") (citation omitted); see also Izzo v. Borough of River Edge, 843 F.2d 765, 768-69 (3d Cir.1988)
 
 
 [8]
 We review the district court's holding that the case is not ripe for review on a plenary basis. Although few courts have wrestled with the appropriate standard of review, we think it apparent from a review of the caselaw that the question of ripeness is generally viewed as a question of law. See, e.g., Wilmac Corp. v. Bowen, 811 F.2d 809, 812-14 (3d Cir.1987); Suburban Trails, 800 F.2d at 364-68
 
 
 [9]
 New Jersey has not gone so far as the introduction of a requirement of pre-publication review, and hence we express no opinion on the appropriateness of such a requirement. Our compass is limited to requiring plaintiffs either to submit their proposed ads to the Committee or to demonstrate in some other concrete way that their proposed ads could subject them to discipline before engaging the federal judiciary in passing on the constitutionality of a disciplinary rule of the New Jersey Supreme Court
 
 
 [10]
 In terms of ripeness considerations, the case at bar is distinguishable from Supreme Court decisions striking down attorney advertising regulations. In all of the cases decided by the Court, the question(s) presented for review arose in the context of state court proceedings in which specific attorney advertisements or solicitations were reviewed for possible violations of the states' regulations on professional conduct. See, e.g., Shapero, 108 S.Ct. at 1919 (attorney submitted proposed solicitation letter for approval by Attorneys Advertising Commission, and approval was denied); Zauderer, 471 U.S. at 631-36, 105 S.Ct. at 2271-74 (state supreme court affirmed the issuance of a public reprimand against attorney who published two newspaper advertisements); In re R.M.J., 455 U.S. 191, 197-98, 102 S.Ct. 929, 934-35, 71 L.Ed.2d 64 (1982) (Missouri Supreme Court rejected attorney's defense that advertising rules were unconstitutional under first and fourteenth amendments and issued private reprimand); Ohralik v. Ohio St. Bar Ass'n, 436 U.S. 447, 452-54, 98 S.Ct. 1912, 1916-17, 56 L.Ed.2d 444 (1978) (attorney received indefinite suspension from practice of law by Ohio Supreme Court following complaints by persons whom attorney had solicited); In re Primus, 436 U.S. 412, 417-21, 98 S.Ct. 1893, 1897-99, 56 L.Ed.2d 417 (1978) (attorney charged with client solicitation in violation of canons of ethics and South Carolina Supreme Court issued public reprimand); Bates v. State Bar, 433 U.S. 350, 356-58, 97 S.Ct. 2691, 2695-96, 53 L.Ed.2d 810 (1977) (attorneys, in order to test constitutionality of state's ban on attorney advertising, ran newspaper advertisements for which they were censured by Arizona Supreme Court)
 
 
 [11]
 Although the report is dated December 31, 1987, it was not made available to us until May, 1988
 
 
 [12]
 In another first amendment context, involving political speech, the Supreme Court rejected a vagueness challenge to the Hatch Act, 5 U.S.C. Sec. 7324(b) (1970), in part because federal employees could obtain advisory opinions from the Civil Service Commission on the legality of their proposed course of political campaign activities. United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 580, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)
 
 
 [13]
 However, we expressly reject the district court's alternative holding that the case was not ripe because of the pendency of the Committee's first annual report to the Supreme Court on the rule. While plaintiffs' appeal was pending before this court, the Committee issued its first report. Although the report contains voluminous detail on the Committee's administration of the rule with respect to advertisements proposed by other attorneys, it does nothing to crystallize the presently abstract challenge plaintiffs have brought against the revised rule. The report cannot be characterized as a formalized administrative proceeding with regard to these plaintiffs. Nor, we note, did the Supreme Court of New Jersey intend it as such. The Supreme Court, in mandating the Committee's reporting function, envisioned an ongoing process of assessment and review. See Petition of Felmeister and Isaacs, 104 N.J. 515, 518 A.2d 189, 207 (1986)
 Given the nature of the Committee's reporting function, were we to hold that plaintiffs' case lacks ripeness because the Committee had yet to issue its report, plaintiffs' case might never be ripe for adjudication.